BAKER *v.* THE STATE, *ex rel.* JOHNSON.

1. The accusation in its original state set forth no facts which, taken alone, would justify the disbarring of an attorney; but it was amendable, and, as amended, good cause for disbarring the attorney was alleged, and therefore the court did not err in overruling the demurrer.

2. Amendments not excepted to *pendente lite* are not open to exception (for allowing them) after the succeeding term of the court at which they were made and allowed.

3. Where by consent of parties the judge performs the functions of a jury, adjudicating upon the facts as well as the law, errors in admitting or rejecting evidence will not vitiate the trial, if the evidence in question is so slight in its probative value as not to be entitled to any material influence in the case for or against either party.

4. It is misconduct by an attorney at law and cause for disbarring him, that, in accounting to his client for money collected, he retained, without an express contract to justify it, fifty per cent. of the amount collected and gave a false and deceitful account of

the amount paid out by him for expenses, knowingly and wilfully representing that amount to be at least three times as much as it was.

5. It is also good cause for disbarring an attorney that in his own case he made a false showing to obtain a continuance, and did obtain it by deceiving and misleading the court.

6. It is also cause for disbarring an attorney that he intermeddled between a brother attorney and his client, grossly slandered the former and endeavored to induce the client to forsake the advice of her own counsel and follow his instead, offering to advise without charge.

7. Where several causes for disbarring an attorney are alleged, and the judge, acting as court and jury, finds them all established, if any of them are sufficient, his finding will not be set aside, nor will the judgment removing the attorney be reversed.

8. The evidence warranted the finding, and there was no error in denying a new trial.                    *Judgment affirmed.*
   August 23, 1892.

Attorney at law. Disbarment. Practice. Amendment. Evidence. Before Judge Maddox. Bartow superoir court. January term, 1892. *

Jesse A. Baker, as an attorney at law, was tried by the judge without a jury, on a rule to show cause why he should not be removed from the roll of attorneys, which rule was granted upon the petition of A. S. Johnson. Baker was found guilty of the charges preferred in the petition, or accusation, and the amendments thereto, and a judgment of removal was rendered. He excepted to the overruling of his motion for a new trial, and to the overruling of his demurrers to the accusation. This accusation alleged: In the sworn answer of Baker in the case made by a rule issued against him from the superior court on the petition of Mrs. S. K. Moor, he stated the following: "The movant's claim on which said decree was predicated consisted of an old judgment rendered against said A. Johnson as administrator of Lindsay Johnson, deceased, in his, A. Johnson's, lifetime, in the superior court of Milton county, rendered on the ———— day of ————, in the year ——. In

the lifetime of A. Johnson a compromise agreement had been made between A. Johnson and movant, or her said agent, by which said Johnson was to pay one thousand dollars which was to be accepted in full satisfaction of said judgment. Under this contract said Johnson paid five hundred dollars, leaving a balance of $500 unpaid. This compromise contract was made on the ——— day of —— in the year ——, or about that time. In the month of December in the year 1882, the said movant, through and by her said husband and agent, employed this respondent as attorney at law to try to collect out of the Johnson estate the said balance of $500.00 with interest thereon, left unpaid by Johnson under said compromise agreement, the said movant and her said agent then not claiming and not intending to make any effort to collect the whole of said judgment, or any more than the unpaid balance under said compromise aforesaid. In making this first contract the said A. P. Moor, acting for his wife, stated he had paid out to Col. Bell, and perhaps others, large amounts in in fees, and he was not willing to pay any more fees unless the litigation should be successful and the money made, and he proposed to pay respondent a reasonable and liberal conditional fee out of what might ultimately be collected, and if nothing should ever be collected nothing should be paid to respondent for his services, but the particular amount of this conditional fee was not at that time fixed. Respondent agreed to accept this proposition, and the said Andrew P. Moor placed the fi. fa. issued from said judgment vs. said Johnson in respondent's hands. Upon looking into the matter a little, respondent came to the opinion that it would be difficult for the Johnson estate to set up and maintain said compromise arrangement above mentioned, and suggested to said Andrew P. that he might be able to ignore said compromise and collect the whole debt as

though no compromise arrangement had been made. He (said Andrew) then told this respondent that if he would proceed for the whole debt and get rid of said compromise, that respondent should have one half of all that should be received and collected, as a conditional fee, and respondent accepted this proposition and agreed to attend to the entire litigation upon the terms proposed. This contract was made on or about the ———— day of——, in the year 1883, and before answer was filed for the movant, or other legal steps taken by respondent as her attorney. Respondent did accordingly set up and claim, in the anwer filed for movant, the whole amount of said judgment, ignoring said compromise. The legal representative of said Johnson's estate set up and made a strong effort to establish said compromise and thus reduce the amount of movant's claim, and also made attack upon the validity of movant's judgment upon several grounds. But these efforts, after very great litigation, all failed, and respondent succeeded in recovering for movant the whole amount of her said judgment and *fi. fa.* without any abatement thereof on account of said alleged compromise, which claim and recovery was graded as a trust claim and judgment against the estate of said deceased." The accusation alleges that Baker further swore in that answer that he received and collected the full amount of the judgment from Moon, as receiver of the estate of Johnson. Wherefore, petitioner accuses Baker of deceit in his profession, in that, having learned of the fact of the compromise made by Johnson, he deceived the master of this court, W. K. Moore, by pretending and contending that no such compromise was made, such pretension and contention being wilfully false. Petitioner further charges him with wilful misconduct in his profession, in that, being first only retained to collect $500 and interest from Johnson's estate, and well knowing

that only that much was due from the estate to his client, yet because he knew that the estate and its representatives could not prove the truth and show conclusively said compromise and payment, he suggested the suppression of the truth and the collection of a sum which he knew, from information received of his client, was not in truth, law or justice due, and did then and there accept employment to suppress the truth and collect money which he knew was not due. Further, having wilfully and corruptly suggested the suppression of the truth, he agreed and undertook to collect the whole amount apparently due on the *fi. fa.* and judgment, upon condition that his client should pay him half of all that should be collected; and though knowing that only $500 and interest were due thereon, he wilfully, falsely and corruptly pretended and contended that the full amount apparently due ($2,000 more or less) was in fact due, and finally succeeded, by such false and corrupt pretension and contention, in collecting $1,654.50, one half of which he still retains as the wages of such misconduct. And although having made said sworn averment of his deceitful practice, and having filed said confession in the office of this court where it is spread upon its records, he yet fails to refund to the representative of the estate any portion of said amount, etc.

Baker demurred generally, and by way of special demurrer alleged as follows: The quotation from his answer set forth in the accusation contains nothing contrary to law or to the duties which he owed to his client or the court as attorney at law. This quotation is simply made the basis or starting point for a long argumentative statement of conclusions, inferences and insinuations, instead of making direct and distinct charges of fact and intent, upon which issue could be joined. The accusation is general in its charges and insinuations, but is not direct and specific, as good pleading and jus-

tice to the defendant require it should be. For example, it charges him with deceiving the master by charging that no such compromise was made, without pretending to state a single word used by him in argument or otherwise before the master. The accusation perverts the quotation from his answer to the rule of S. K. Moor, and interprets it as meaning that only $500 was legally due on the *fi. fa.*, and that the compromise was legally valid and could be set up and maintained in law. Nothing of this sort appears in the quotation, but the accusation assumes that it is so contained, and therefrom the inference is drawn that defendant suggested the suppression of the truth, etc. In fact, the whole of the charges contained in the accusation are based on a misinterpretation of this quotation and consist in argument and inference of the pleader. Exception is taken to the overruling of the general and special demurrers.

The original accusation was brought on August 1, 1888. Ten days afterwards an amendment thereto was filed, in which the relator prayed that in each place where the accusation is made by him against Baker, it be so changed as to appear that the accusation is made in the name of the State of Georgia upon the information of A. S. Johnson. In this amendment are the following allegations: Baker, having been informed of said compromise and having disobeyed the instructions of his client who directed him to see the representative of Johnson's estate and know if she would abide by the compromise, suggested that it be ignored and the full amount apparently due on the *fi. fa.* and judgment be collected, and although he knew that the apparent amount was not in fact due, he undertook and contracted to collect the same upon condition that S. K. Moor would pay him, or allow him to retain half of said amount; by which contract Baker became directly and pecuniarily interested in the suppression of the compromise con-

tract, in disproving the same, and in disproving any payment upon the *fi fa.* or the judgment upon which it was predicated. Not satisfied with the information given him by his client or her agent, of the payment which had been made on the *fi. fa.* and judgment by A. Johnson in his lifetime, Baker required his client and her agent to make affidavit of the amount due thereon, which they did, swearing that $300 had been paid thereon, and they sent this affidavit to Baker who has retained it in his possession ever since, but neither he nor his client, nor any one for them, has ever entered said payment on the *fi. fa.* Afterwards Baker, appearing before W. K. Moore, the master, and wholly failing to enter as a credit the payment which had been made on the *fi. fa.* and judgment, and omitting to mention the same or bring it to the attention of the master that the just and true balance due thereon might be allowed by him, offered the *fi. fa.* as evidence of the true amount due thereon (though knowing of the payment which had been made) ; and the *fi. fa.* having been received by the master, Baker announced his case closed, knowing that by the allowance of the same in full he would, by the terms of his contract with S. K. Moor or her agent, receive at least $150 and interest more than he would receive should he inform the master of the truth by crediting the *fi. fa.* with $300 which his client had sworn had been paid thereon, or informing the master of the payment. And after the *fi. fa.* had been so received, the representative of Johnson's estate introduced evidence to show payments upon the *fi. fa.* and a compromise thereof, and Baker, though knowing of the payment shown by the affidavit of his client, did nevertheless introduce as a witness A. P. Moor, he being duly sworn, and by questions propounded to him procured from him a denial both of the fact of the compromise and that any payment had been made on the execution and judg-

ment or the compromise agreement, and Baker knowing that he would profit, and intending to profit by the failure to enter the credit upon the execution, contended and argued to the master that the full amount apparently due thereon was in fact due. Thereafter, the $1,600 having been paid to Baker by the receiver of the estate, Baker wrote to A. P. Moor, agent for S. K. Moor, on November 21, 1887, that he had, after paying witnesses and everything else, only about $500, and then had to pay McCutchen $50 for helping him in the case ; whereas Baker has since sworn in the rule case of S. K. Moor against him (to recover said money or a part of it) that he had not paid out on account of witness fees and everything else over $75 or $100, and that he had not paid McCutchen $50 or any other sum for helping him in the case ; and the relator avers these two statements as last made to be the truth, and that Baker, when he wrote the statements contained in the letter, intended to deceive his client, knowing them to be false, and having collected said money he failed to pay over the same, or any part thereof, until ———, when he paid over half of it to S. K. Moor and refused to pay the other half or any part of it; and finally, when called on by rule to show cause why he should not pay over the other half, less $165.50 proposed to be allowed him by his client, he pleaded and swore as set out in the original accusation ; and after that accusation was served upon him, he amended his answer to the rule of S. K. Moor and pretendingly pleaded that he had been mistaken when he stated, in his original answer to that rule, that he had collected the whole amount apparently due on the *fi. fa.* against the Johnson estate, and that in fact he had not collected the full amount. Yet notwithstanding said answer he still refused and omitted to pay or offer to pay the $827 50 or any part of it, but went to trial on the issue made by said plead-

ings, and thereon produced and put in evidence the letters of A. P. Moor, agent of S. K. Moor, wherein Baker was distinctly informed of the compromise agreement and of the fact that $500 had been paid on the compromise of the judgment and *fi. fa.* by Johnson in his lifetime; and also put in evidence the affidavit of the Moors wherein they both swore that $300 had been paid on the *fi. fa.* and judgment; and by himself and his counsel argued to the court and jury that if the fund then in litigation was an unholy fund, obtained from Johnson's estate by the joint fraud of himself and the Moors, the jury should leave the parties where they found them, and read authority to sustain said position. And although the jury found against Baker in that cause, he still retains said money and refuses to pay it over to his client. The relator further shows that in 1888, Baker having been employed to collect the *fi. fa.* of Thompson Anderson, survivor of Allison, Anderson & Company, against E. D. Graham, and having heard that a *fi. fa.* in favor of Graham & Graham, one of whom was E. D. Graham, against Cora M. Gray, had been in some way or to some extent transferred to W. H. Howard, applied to Howard to learn whether the transfer had been made and the facts of the same. Howard and Baker being upon friendly terms, Howard having often assisted him pecuniarily, he, knowing Howard's feelings towards him and believing that on account thereof Howard would the more freely communicate any information he possessed, told Howard that he, Baker, owned the *fi. fa.* of Thompson Anderson against E. D. Graham; and afterwards in the superior court on the trial of the rule case of Graham & Graham against Franklin, to distribute the money Cora M. Gray had paid on the *fi. fa.* of Graham & Graham against her, Baker, then claiming the same on the *fi. fa.* of Thompson Anderson against Graham, and attempting to set

v 90-11

aside the transfer of said *fi. fa.* against Gray to Howard, testified that he did not own the *fi. fa.* of Thompson Anderson against E. D. Graham, and being asked if he had not told Howard that he owned said *fi. fa.*, answered "I did"; and being asked, "Was that true?" answered "No"; and being then asked, "Did you tell Howard the truth, then?" answered "No"; and being then asked, "You swear now you told Howard a falsehood?" answered "Yes."

The amendment just set forth was allowed on August 10, 1888. The first demurrers by the defendant were filed on July 15, 1889, and were considered by the judge in connection with his consideration of the case generally upon its merits on the evidence. At the same time and in the same connection Baker demurred to the amendment just stated, on the grounds as taken in the first part of the special demurrer, except only as to the portion of the amendment touching his failure to enter a credit on the *fi. fa.* against Johnson's estate for money which he did not collect and was not collected by S. K. Moor after the *fi. fa.* was placed in his hands, which charges he says seem to be based on a misapprehension of the duties of an attorney at law. Further objecting, he says that the charges set forth in the amendment are not legally sufficient as to that portion which relates to what he said to Howard and what he testified in relation thereto, because it does not charge any breach of duty or bad faith towards any client or any court, but amounts simply to an allegation that he admitted with more than usual promptness, under oath, that a statement he had previously made to a third person was incorrect, without further explanation. He also says that the portion of the amendment referring to what he had written to S. K. Moor in relation to the money collected by him, and the charges made against him in connection therewith, are indefinite, vague and

insufficient, and do not make any case against him; but that the accusation shows that he claimed a conditional fee of one half as due by contract, and that he sought only to retain what he insisted the contract authorized him to retain. Another ground of this demurrer is, that the accusation does not attach as an exhibit a full copy of his answer from which the quotation is made, which quotation is made the basis of the accusation, nor does it otherwise set forth the substance of the whole of his answer.—One of the grounds for new trial is, that the court erred in allowing the amendment to which the demurrer just stated relates, over Baker's objections that it involved a new and distinct accusation against him, in no way connected with the original accusation, which ruling was made during the trial of said case. This ground then states that the amendment was allowed by Judge FAIN, and that Judge MADDOX who tried the case passed no order therein.

The amendment just recited was sworn to. Other amendments filed July 8th, 25th and 26th, August 23d, and November 6th, 1889, were not sworn to, and on each one of these is entered by the respondent an objection to its sufficiency and a denial of the charges therein. The motion for new trial complains of error in overruling the respondent's objections to the sufficiency of each and every accusation against him, and of error in allowing the amendments now to be stated, because none of them were verified by the oath of the relator. The judge certifies that the ground as to failure to verify was not mentioned before him. The amendment of July 8, 1889, alleged as follows: On May 10, 1889, came on to be heard the cause of J. A. Baker v. S. K. Moor, which was a motion to set aside the verdict rendered against him in favor of S. K. Moor; whereupon Baker moved to continue said motion for a new trial, and for cause to continue stated upon oath that G. L.

Bell in April, 1889, had told him that if he, Baker, had
known the character of A. P. Moor (who was a ma-
terial witness against Baker on the trial of the case of
S. K. Moor against Baker), he, Baker, would not have
lost his cause, that he could get affidavits at Cumming,
Georgia, to impeach Moor, and that he, Bell, and his
father would give Baker affidavits as to Moor's bad
character tending to impeach him ; and that said Bell
at the same time and place told him to come over there,
and he, Bell, would help Baker in getting up affidavits
to impeach Moor ; and that that was the first intimation
Baker had had that Moor could be impeached.   Upon
this showing Baker secured the continuance he moved
for.   In truth Bell never told Baker that he could get
affidavits as to Moor's bad character tending to impeach
him, nor that he would help Baker get said affidavits ;
on the contrary, he told Baker he did not think Moor
could be impeached in Cumming, Georgia, and he never
told Baker at any time that Moor could be impeached
anywhere, at any time or under any circumstances.   The
statements of Baker so made to the court were wilfully
and knowingly false in that he swore that the alleged
conversation he had with Bell in April, 1889, was the
first intimation that he had that Moor could be im-
peached, when in truth Baker himself had stated in a
letter written by him to Bell on March 21, 1889, that he
had been informed that it would not be a very difficult
matter to impeach Moor in Forsyth county.   The state-
ments so made by Baker to the court were solely to de-
ceive the court and secure a continuance of the motion
for a new trial ; and having so made the statements, he
argued the same and insisted upon their truth and legal
sufficiency.—The motion for new trial alleges that the
court erred in allowing this amendment over the re-
spondent's objections that it introduced a new and dis-
tinct accusation against him, in no way connected with

or explanatory of the original accusation, and that it appears therefrom that the matters therein charged against him all transpired after the filing of the original accusation, and did not exist at the commencement of the proceedings.

The amendment of July 25, 1889, alleged as follows: On February 21, 1888, Baker having been employed by W. E. & J. R. Puckett, legatees under the will of E. D. Puckett, deceased, and knowing that E. D. Graham, a member of this bar in good standing, had been employed to represent and was then representing, as attorney, Mrs. Emily Puckett, executrix of E. D. Puckett, wrote to said executrix, among other things, to wit: "My firm represents Wm. E. & Jas. R. Puckett, who, are legatees under the will and, as you well know, stand in the greatest, in fact the only danger, in consequence of your not paying the debts of your testator. I am not mad, neither are my feelings the slightest ruffled at you for interposing the claim to the levy on the lands of Mrs. Lary. I am satisfied you are acting under the advice of your counsel, who I must say only desires to get you involved in long, tedious and expensive litigation, that he may have the harvest he had in the Tumlin case, and get as a lawyer more out of the estate than any one of Tumlin's heirs has yet been able to get. And in my judgment, if you go on following Graham's advice in the administration of that estate, you will squander everything you have, and everything Capt. Puckett left those two little children of yours, that the old man tried so hard to provide bountifully for. Graham undertook to represent Mrs. Cora Gray, and is now suing her for about two thousand dollars attorney's fees. He undertook to represent Mrs. Dick Roberts, and to-day, while her husband left her good property, she has not one cent of it, and has had to pay me out of her own estate over one hundred and

fifty dollars besides other amounts; and all of this where there was no necessity for it whatever, except to make fees for which he stood sorely in need. These are notorious facts known of all men, and should be known by you. As long as you listen to Graham you never will pay a cent of the indebtedness of that estate, but will hold back and make no effort to wind the estate up, and have me moving to remove you, and to have you give bond, etc., etc., and you resisting it and lawing and paying fees out of the estate to Graham, which will finally come out of you, and a thousand other things to bedevil, worry, harass and annoy you and everybody else, and take the money of that estate to be by you and Graham tried to be saddled on my clients, and their property taken to pay it. Now your duty is plain, and you should proceed at once to sell such property as is set apart in the will to pay debts, and pay them; and then turn over to yourself, as guardian of your children, what is going to them, and then be discharged from the executorship, for then the estate is fully administered. But instead of doing that (and your common sense will tell you that is right), you will listen to Graham and wait until after the 12 months expire, and then you will become liable to suit. Everybody begins to sue and levy upon the estate, and here it goes and the estate is wasted. Now as you have written me and caused me to believe that up to this time you have been misled by Graham, I am determined you shall have a fair chance to do right, and then if you get into trouble it will be your own fault. I will not move against you on the first Monday in March as I intended to do, but will wait until first Monday in April and then move, if something is not done towards winding up that estate. I know I do not bear you the slightest ill will, but do sincerely desire you to go on and administer the estate and have no trouble, and

will render you any aid in my power to properly aid you, and would not charge you one cent, and make you this offer to convince you of my sincerity in all that I say. With the best of wishes, I am very truly, J. A. Baker. P. S. Judge Howard concurs in every word I have said about the proper administration of that estate. J. A. B." The allegations against Graham are each and all untrue and slanderous; and it was wilful misconduct in Baker thus to attempt to induce Mrs. Puckett to cease to act upon the advice of her chosen attorney, and to endeavor to induce her to abandon him and accept in lieu thereof his own so-called advice.—The motion for new trial alleges that the court erred in allowing this amendment and in overruling the respondent's objection that a new and distinct cause of action was thereby added to the original accusation, which new and distinct ground was in no way connected with the original accusation.

The amendment of July 26, 1889, alleged that after the original information in the present case had been served upon Baker, he amended his answer to the rule of S. K. Moor, by alleging that his original answer thereto was mistakenly made in that he swore that he had succeeded in collecting the whole amount due on the *fi. fa.;* and in said amendment he admitted that the compromise agreement had been allowed by the master, and that he had not collected the full amount of the *fi. fa.;* and on the trial of the rule case he swore that the master allowed the compromise agreement and did not allow the full amount of the *fi. fa.* Notwithstanding all of which he still fails and refuses to pay over to S. K. Moor any part of the $827.15 remaining in his hands.—The motion for new trial alleges that the court erred in allowing this amendment and in overruling the respondent's objections, which were the same as those made against the amendments just above stated.

The amendment of August 23, 1889, alleged that Baker voluntarily approached R. H. Jones who had an execution against the Pyrolusite Manganese Company for $19.05 principal, besides interest and costs, and represented to Jones that he, Baker, could collect the execution, and if Jones would turn it over to him he would do so, and as an attorney and a man he would guarantee its collection. Thereupon Jones turned it over to him as an attorney for collection, and he thereupon caused it to be levied on an ore-washer and fixtures, as the property of the defendant in execution, and caused the same to be advertised for sale, and at the sale caused the same to be knocked off at $11, and then sold the same to the alleged bidder for $75, having before the sale bargained it, and only paid over to Jones $9.95 and pocketed the difference between $11 and $75, and still retains the same, concealing his conduct in the premises from Jones and refusing to pay over to him the amount due on the execution, and still retains and withholds from the manganese company the difference between the amount of the execution and the purchase price of the property.—The motion for new trial alleges that the court erred in allowing this amendment and in overruling the respondent's objections thereto, on the grounds that no time is therein alleged as to when the matters occurred, and the same is barred by the statute of limitation, and that it seeks to add new and distinct grounds of accusation in no way connected with the original accusation.

The amendment of November 6, 1889, alleged that upon this trial and in argument before this court, the defendant falsely stated that Mrs. Emily R. Puckett opened the correspondence with him, upon which and in consequence of which the letter quoted in the amendment of July 25th was written; and as evidence of this charge the relator tenders the letter of Baker & Heyward of February 20, 1887.

The motion for a new trial contains the general grounds that the judgment is contrary to law and evidence, and the following special grounds :

Error in refusing to continue the case when the amendment allowed and filed on July 26, 1889, was made, Baker and his counsel both stating that they were surprised by the amendment, that it made a new and distinct ground which they were then not prepared to meet, and that they could procure evidence to meet and overcome it; Baker's statement being made under oath. This motion was made on the 25th and 26th of July, 1889; the case was passed from then to the 4th and 5th of November, when the court heard all competent evidence offered by either party.

Error in overruling Baker's objections to the following testimony of A. W. Fite: Q. " State whether or not Mr. Baker was present during the entire trial " (referring to the trial of the rule case of S. K. Moor v. J. A. Baker). A. " Well, sir, he was here and might have gone out, and no doubt did for a few minutes during the trial." Q. "State whether or not James B. Conyers addressed the court and jury upon the argument of that case." A. "Yes, sir, he made an argument before the jury." Q. "State whether or not he read any authority and took any position in regard to the court leaving the parties where they found them, if this was an unholy fund." A. "Yes, sir, he took that position, argued to the jury and read authority from the Supreme Court, and asked Judge FAIN to charge the jury that if Moor and Baker confederated together and defrauded the Johnson estate, that Mrs. Moor, the wife of Moor who was acting as agent, could not recover in this case, and that the courts would leave them where they found them. Mr Conyers read authority and asked the court to charge the jury on that point." The objections were, that there was no charge or accusation

authorizing any such testimony; that it showed the acts of James B. Conyers and not of Baker; that it was irrelevant; that Baker was not shown to have been present or in any way assenting to it; and that Conyers was Baker's counsel in that case, his positions were his own, and Baker was not responsible for them.

Error in admitting the following testimony of A. S. Johnson: Q. "Did you hear the position taken by brother Conyers in regard to this being an unholy fund?" (referring to the fund claimed in the Moor rule case). A. "Yes, sir." Q. "What did he say?" A. "I can't give his exact words; he read to the court on the question that where the fund was an unholy fund and fraudulently obtained, that the court would not help either party, and argued to the jury that if they found it was an unholy fund, the courts would not have anything to do with it. He did not say that it was an unholy fund, but if the jury should so find." The objections were the same as those urged against the admission of the testimony of Fite.

Error in admitting, over objections that it was irrelevant and immaterial, the following testimony of E. D. Graham: Q. "What amount of fees did you receive from that estate?" (referring to the estate of E. D. Puckett). A. "I have received thirty-two dollars. I prepared an account before the master for $150, and gave them credit for the amount received. Q. "Has he allowed it?" A. "I don't think he has reported. I afterwards appeared for her when the will was probated." Q. "What are your charges? Are they reasonable?" A. "I think they are quite low."

Error in rejecting the following testimony given on the cross-examination of W. K. Moore, a witness introduced by the relator, and shown to be a lawyer of several years practice, and this testimony being offered as expert evidence: Q. "If Mr. Moor had come to you

and told you that he had received about $1,200 on this
*fi. fa.*, and that he had ascertained from Maxwell & Vincent that they had paid their money to Col. Johnson,
and had paid it on the Dysart & Vincent debt, Johnson
being the means through which the money had been
paid, and that it took little, the rise of $1,200, to pay
the compromise of the Dysart & Vincent claim, and insisted that when he made that affidavit that he did not
know what Maxwell & Vincent would swear, was still
open for about half, that he got it from Johnson and
that it had been paid upon the *fi. fa.* of Vincent, and
that he had discovered that it came from Dysart & Vincent from Johnson, don't you think that it would be the
duty of Baker to go on and insist that the Johnson *fi. fa.*
had nothing paid on it?"   A. "I think so."   Q. "Then
suppose that your client was to tell you that Col. Bell
had compromised this case with Johnson, and that he
had discovered that he had never paid a cent—"   The
court here interrupted by stating that " what Col. Moore
thinks about this under the same circumstances, and
what he would have done, is ruled out."

Error in admitting, over objection that it was irrelevant, hearsay and illegal, the following testimony: Q.
to Baker by Akin: "Did not Mr. Fite, upon the motion
when you made your motion to continue your motion
for a new trial in the S. K. Moor rule case, did not Mr.
Fite then and there state to the court under oath that
he had a conversation with Geo. Bell, in which Geo. Bell
denied having the conversation with you which you
had testified about before the court?"   A.   "Yes, sir."

Error in admitting, over objection that it was hearsay
and irrelevant, a long itemized account made out by
A. M. Foute, showing that he had as attorney for Mrs.
A. N. Roberts, executrix of R. C. Roberts, deceased,
made collections from seventy-nine different parties,
and had collected the sum of $3,237.05, for which he
had charged commissions to the amount of $323.70."

Error in admitting in evidence, over objection that it was hearsay and irrelevant, the petition of Mrs. Emily R. Puckett against Thomas M. and William E. Puckett *et al.*, filed on January 18, 1889, alleging that E. D. Puckett died testate and his will, a copy of which was annexed, was proved in common form October 3, 1887, and letters testamentary were issued to the plaintiff, and on February 6, 1888, the will was proved in solemn form; that the testator owed some debts the exact amount of which the plaintiff could not state, but set forth twenty-three persons and firms to whom he was indebted in the aggregate sum of $1,102.95; that commissioners to set apart a year's support for the plaintiff and two minor children were appointed on April 2, 1888, and had assigned $750 in money to be realized out of the property of the estate, which report and assignment were made the judgment of the court on September 3, 1888; that since her qualification the executrix had paid debts out of the property of the estate, amounting to $632.38, which includes $328.78 paid to year's support, the other amounts going to eighteen different persons, among which was $32 to E. D. Graham; that she has assented to all the legacies, except Kittie Larey, James R. Puckett and William E. Puckett; that R. W. F. Jones on a fraudulent claim has sued her; that there is not enough property to pay his debts outside of specific legacies; that several parties have sued her and others are threatening suit and collection by executions; that claims will be filed by different legatees, and thus many suits will arise; that she is advised that it was the intention of the testator to charge the legacy of William E. Puckett and James R. Puckett with payment of the debts, in the event the property set apart for that purpose proved insufficient, and if this is correct, the property bequeathed to them should be sold to pay the debts, but William E. and James R.

insist that the rents alone should go to pay debts, and a conflict of legal opinion exists about this, and doubt as to construction of the will. To prevent multiplicity of suits she prayed for construction and direction, for injunction against creditors and that they be required to come into court and prove their claims, for guardian *ad litem* for children, and for general relief and process. The bill also specified other property not mentioned or specifically devised by the will. The will gave certain lands to William E. and James R. Puckett jointly, but directed that they be retained in possession of the executrix and rented out, and the proceeds be applied to the payment of all the testator's debts, and then be turned over to William E. and James R. Puckett and not before. The bill was sanctioned and ordered filed and restraining order was granted on January 17, 1889; and the cause was referred to J. M. Neel as special master on March 2, 1889.

Error in admitting, over objection, the following testimony of George L. Bell: "2d direct interrogatory. Please state whether or not you ever received any letter or communication from J. A. Baker relating to impeaching A. P. Moor. If yea, please state when, and attach the original, properly identified, to your answer. Did or did you not reply to said communication? If yea, attach copies of the same, properly identified, to your answers; if you have not copies, give their substance as nearly as you can, and state where the originals are. A. I did. The letter is in my office at Cumming, Ga. I cannot, therefore, attach it to my answers. I replied to said communication. I have no copies of my reply. I do not remember date of Baker's letter, but it was before spring term of Pickens superior court. 3d direct interrogatory. Please state whether or not you told said J. A. Baker at Jasper, Ga., in April, 1889, or at any other time or place, that he could get affidavits at Cum-

ming, Ga., or anywhere else, to impeach said Moor, and
that you and your father would give affidavits of Moor's
bad character tending to impeach him, or if you would
help said Baker to get said affidavits? Did you or did
you not ever tell said Baker at any time or place that
the said A. P. Moor could be impeached by affidavits
procured from any designated locality? State fully all
that was said between you and said Baker on this sub-
ject." A. "I did not. I did not. I did not. I did not.
I do not remember everything that was said on this
subject. We talked several times during the week
about Baker's case. I asked Baker when I first met
him if he had received my reply to his letter. He said
that he had, and that he intended to go over to Forsyth
county and see what he could do towards getting affida-
vits to impeach Moor. I told him that he might be able
to get them in the lower portion of our county where
Moor had last resided, but I did not know. I asked him
to come to my house and be my guest when he visited
our county. As he went to leave Jasper and I bade
him good-bye, I remarked in a general way that if I
could be of service to him he could command me. I
also told him, during some of the conversations had
with him, that Moor was rather a troublesome man. I
stated further to him that I had collected $100 from
Col. A. Johnson for Moor, for which I had received no
pay. That is the substance of my conversation with him."
The objection was, that by the first interrogatory and
the answers quoted, it was sought to give and did give
the contents of writings, and that by both the interrog-
atories and answers the object was to charge and convict
the defendant of false swearing or perjury, and that to
do so he must be confronted by the witnesses. The
objection was also in writing on the interrogatories at
the time they were sued out. When the objection was
made to the court, counsel for the relator stated that

the letters alluded to by the witness were in existence and would be produced, and afterwards the following letters were read in evidence.

"Cartersville, Ga., March 21st, 1889.

"Hon. Geo. L. Bell: Dear Sir,—I am in some important litigation with Andrew P. Moor, and in the course of his testimony he swears knowingly and corruptly false. He is a new comer here and not generally known, in fact known very slightly. I have been informed that it would not be a very difficult matter to impeach him in Forsyth Co. Please let me know how this is, and I will go over and see about it.

"Yours truly, etc.    J. A. Baker."

To this letter was attached the affidavit of Geo. L. Bell that the above letter was the letter called for by the *subpœna duces tecum* and it was the only letter called for in his posession, etc., when served with the *subpœna*.

"Cumming, Ga., March 30, 1889.

"Mr. J. A. Baker: Dear Sir,—Your favor of the 21st inst. has been received. In regard to the impeachment of A. P. Moor, I expect it would be difficult to do, owing to the fact that for several years past he has been moving from one place to another, and has not resided in any community long enough to show general character. Of course, if you were to undertake it you would want to successfully discredit him. This is my opinion about it, and I write it candidly. I am sorry you are having trouble with him. He is a troublesome man to deal with.    Yours truly,    Geo. L. Bell."

Error in admitting, over objections, the following testimony of George E. Sims by interrogatories: "I heard Geo. L. Bell read a letter he had written J. A. Baker in 1889, relative to the impeachment of A. P. Moor. I heard Geo. L. Bell read a letter from J. A. Baker on the same subject. I have neither the originals or copies. Baker wrote Bell, stating he had been informed A. P. Moor could be impeached in this county, and asked if it could be done. Bell wrote Baker that in his judgment said Moor could not be impeached in this county. This

was the latter part of March, 1889." The objections were substantially the same as those taken in the ground just preceding this one; and it was further objected that there was nothing to show that the letter from Bell to Baker was ever sent or mailed to Baker, and that the original was not accounted for by the witness. Counsel for the relator stated that the letters were in existence and would be produced; and afterwards during the trial, letters of similar purport were read in evidence.

Error in admitting the following testimony of R. H. Jones, over objection that it was hearsay and irrelevant: "The first I knew of the levy on the *fi. fa.*, I was passing by Wolf Pen court one day, and Mr. Jenkins, the bailiff, asked me if I was not going to get out, and I said, for what? 'Well,' he [replied], 'you have a case here to-day. You have got some property levied on here,' and I said, 'I reckon not,' and he said, 'Yes, you have,' and I asked him who was representing me, and he said, Mr. Baker. He said that Johnson was there representing Baker, and I remarked that I had nothing to do with it. And also Jenkins said, 'You had better stay here and see that it brings your claim,' and I told him I was to get my money anyhow."

Error in admitting, over objection that it was irrelevant and hearsay, the petition of Adelaide N. Roberts, executrix, against J. R. Willmore *et al.*, filed on May 3, 1886, in Bartow superior court, for injunction, direction and marshalling assets: The bill sets out the creditors of the estate; shows herself to be executrix. The assets of which testator died possessed are of the value of $6,000. Pleads known business inexperience. Says she consulted A. M. Foute as attorney. Thought that the estate was amply solvent, therefore made no application for year's support. Alleges much complication in the business with W. W. Roberts, and that she arbitrated with W. W. Roberts and was surprised at the

result of the arbitration. She intrusted A. M. Foute to collect debts due the estate and pay debts owing by the estate, and followed his advice. He finally furnished her with a statement showing that he had collected $3,237, and paid $2,918 ; and that he claimed fees $343, the balance in his hands being insufficient to pay him. She and Foute have collected about $4,000, and paid all out but about $200 used by herself the first year. All the solvent claims have been collected, and the only assets consist of $100 worth of corn and an equitable interest in a farm. Sets forth the suits of Willmore, and says that *fi. fa.* is in the hands of sheriff. Sets forth an indebtedness to Nancy Barnwell, and to James E. Stephens, executor, A. M. Foute and R. H. Jones, and that to all these suits *plene administravit* must be pleaded. Shows that she and her minor children are entitled to year's support. Prays for injunction, and that the estate be distributed by decree of the court, etc. Signed by Graham & Graham, plaintiff's solicitors. The court on May 2d, 1886, sanctioned the bill and restrained all the parties, and set the case for a hearing on the 1st Monday in June, 1886. It was then continued to 3d Monday in June, 1886. On the 3d Monday in June, the court enjoined all parties until the final hearing, except J. R. Willmore's suit against Mrs. Roberts to fix her individual responsibility. Service of said bill was acknowledged by J. A. Baker, attorney for J. R. Willmore, May 3d, 1886. The answer of J. R. Willmore was, in brief, as follows : Defendant admits that testator died in possession of a farm near Adairsville, Ga., but denies that it is only of the supposed value of $500, and says that it was appraised at $1,590 over and above incumbrances. Denies that plaintiff only received personal property of the value of $1,000, but says that was worth $2,480.70, what it was appraised at, and that plaintiff returned the items showing this to be a true in-

v 90-12

ventory, and swore that it was "true, just and correct";
that the notes received by plaintiff were worth and ap-
praised at $5,064.84, none of which were appraised as
insolvent or desperate, and that nearly all are on sol-
vent parties, and at the lowest estimate are worth $4,000;
that the open accounts were appraised at $2,057.71,
making a total of $7,122.55, instead of $6,000 as al-
leged.; and that of the accounts plaintiff should have
collected at least $1,500. Defendant charges that on
20th May, 1885, plaintiff collected of D. J. Guyton
$728.82, one half belonged to the estate; that she has
an award against W. W. Roberts for $1,010.40, and that
this is not disputed. Defendant admits plaintiff's ina-
bility to attend to the business of the estate, and this
is the direct and sole cause of the complications in the
business of the estate. Defendant charges that plaintiff
sold all the personal estate except such things as she
wanted, but for some sinister purpose fails and refuses
to make out and return a true and correct sale bill.
Defendant does not know how plaintiff transacts her
business as between herself and her attorney-at-law,
A. M. Foute, whether she takes the advice of her
counsel or not, but is informed that she fails to do so.
Nor does he know whether plaintiff knew the condition
of the estate or not; she has been in possession of all
the assets and *data* since June 22, 1883, and if she don't
know, it is due to her carelessness and incompetency;
she should have known. Defendant makes a part of
his answer a part of plaintiff's returns to the ordinary
as executrix, wherein she shows that she has paid on
open accounts $1,575.61, some of the accounts made
after the death of testator; that she has paid notes in
full, amounting to $302,53; that in law these should
only prorate with defendant, but she did right in paying
them, because the estate was solvent so far as notes
were concerned, and she ought to pay defendant. The

true state of matters is, that the estate is worth, solvent notes, $4,000; solvent accounts $1,500; Guyton matter, $364.41; Adairsville farm, above mortgages, etc., $1,500; personal property, $2,480.70; four hundred and seventy bushels of corn, $235; total, $11,180.51. The debts will not approximate this sum. Shows that defendant's debt was on note, and that judgment had been recovered; and prays that restraining order be dissolved, that plaintiff be enjoined from further meddling with the estate, and that a receiver be appointed, and general relief. J. A. Baker, def'ts sol'r. This answer sworn to by J. A. Baker, June 7th, 1886, he swearing the facts positively alleged to be true. The court granted the injunction against plaintiff, appointed Douglas Wikle receiver, and enjoined all the creditors from proceeding against the estate, but allowed Willmore to press his suit against the executrix to fix her personal liability. To prevent an adjudication as to waste, etc., before the special master, M. R. Stansell, Willmore amends his pleadings and strikes all of his original answer charging waste, etc. This amendment was allowed on November 4, 1886, by M. R. Stansell, special master, to whom the whole matter, with full power, had been referred by the court, and his amended answer was signed by J. A. Baker, attorney for Willmore.

Touching the grounds complaining of the admission of evidence, the judge certified that, to avoid constant and repeated argument, he stated at the trial that he would not observe the usual rules of law as to the admissibility of evidence, but in making his finding would undertake to give effect only to legal evidence.

W. I. Heyward, McCutchen & Shumate and Dabney & Fouché, for plaintiff in error.

A. S. Johnson, T. W. Akin and A. W. Fite, contra.