## JONES v. McCULLOUGH, relator.

BECK, J. 1. The allegations in the petition set forth facts showing that the defendant, acting under employment as an attorney at law for a named corporation of which the relator was president, had been guilty of deceit and wilful misconduct relative to his client and to his professional engagement, and the general demurrer thereto was properly overruled. Civil Code, § 4967, par. 3.

2. The fact that after the conclusion of the trial, and before the rendition of the judgment by the judge trying the case without the intervention of a jury, an affidavit was made by a witness who testified upon the trial, changing his testimony as given at the hearing of the cause, and that this affidavit (after giving notice thereof to opposing counsel) was sent to the judge while he had the case under consideration, will not, though an irregularity, require the grant of a new trial, the trial judge having stated, in his certificate to this ground of the motion for a new trial, that the affidavit was not considered by him as evidence in the case.

3. The case having been submitted to the court without the intervention of a jury for trial under the evidence and the law, and it appearing that the evidence was sufficient to authorize the finding of the court that the defendant had been guilty of deceit and wilful misconduct in his profession in respect to the matters charged against him, the court's finding and consequent removal of the attorney will not be disturbed.

*Judgment affirmed. All the Justices concur.*
APRIL 9, 1912.

Disbarment of attorney. Before Judge Ellis. Fulton superior court. August 12, 1911.

Jones, a practicing lawyer, was charged with deceit and wilful misconduct, upon substantially the following facts as alleged: As attorney at law for a corporation of which the relator was president and managing officer, Jones sued out an attachment, upon a debt of $571, against the College Park Lumber Company, and caused a garnishment to be issued and served upon one Kelly, who owed the lumber company $700. Afterward, in consideration of $100 paid to him by the attorney for the lumber company, Jones dismissed the attachment and gave, in behalf of his client, a receipt for the $100, reciting therein that he had dismissed the attachment and garnishment proceedings. He concealed from his client what he had done, as just stated, but thereafter endeavored to obtain the relator's consent to such dismissal. It was refused. Then he informed the relator that the attachment had already in fact been dismissed, claiming that it would have been ineffectual on certain legal grounds. He stated to the relator that he was about to in-

stitute a proceeding against the lumber company for a receivership, in which he estimated that his fee would be $300, and that he would divide with his client whatever fee he received, in addition to the recovery of as much of his client's demand as could be effected in that proceeding. After ascertaining that the attachment had actually been dismissed, the relator consented for his company to be a plaintiff in the receivership case. The case was instituted, the affairs of the lumber company were administered therein, and a final decree was entered by consent. By this decree the creditors of the lumber company were awarded fifty per cent. of their demands, a fee of $370 was awarded to the defendant's attorney, and a fee of $300 was awarded to Jones and two other attorneys for plaintiffs. Of this Jones received $150. About a year after the dismissal of the attachment and the payment of the $100 to Jones, the relator learned of the fact and confronted Jones with it. He at first denied receiving the $100, then stated that he had returned it to the attorney of the lumber company, then tried to settle the matter by offering to pay the $100 to the relator, and finally contended that the relator's company had no right to it, and that it belonged to the lumber company.

By his answer Jones denied all deceit and misconduct, and set up, among many allegations, that the $100 paid to him was to be held by him to guarantee his client against costs should it be held liable therefor in bankruptcy proceedings that were threatened; that the attachment could and would have been avoided; that he did not agree to divide his fee; that he had offered to pay the $100 to his client, but the offer was declined, and he still held the amount and was ready to pay it over; that after the attachment and garnishment had been issued, it was discovered that the attachment was void (for reasons stated) ; that it was for the interest of his client to dismiss the attachment and proceed under the receivership; that his client received thereby more than it. could have received in bankruptcy proceedings; that the defendant in attachment would have resorted to bankruptcy except for the agreement made by Jones in behalf of his client; and that the client was fully informed of all the facts and circumstances, and agreed to the procedure adopted. The case, upon the pleadings and the evidence, was submitted to the judge without a jury. He found that the relator's charge was sustained, and entered judgment of disbarment. A motion for new trial was overruled, and Jones excepted.

*Watkins & Latimer, Rosser & Brandon,* and *James L. Mayson,* for plaintiff in error, cited 20 Cyc. 12, n. 23; 155 U. S. 438; 174 U. S. 728; 57 Pac. 701.

*Hugh M. Dorsey, solicitor-general,* and *Smith, Hammond & Smith,* contra, cited 19 L. R. A. (N. S.) 414, and authorities referred to in note; 95 N. E. 402; 90 *Ga.* 153.