21844.   WOOD *v.* STATE *ex rel.* BOYKIN.

DECIDED SEPTEMBER 26, 1932.

*Hooper & Hooper,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, E. A. Stephens,* contra.

SUTTON, J.   (After stating the foregoing facts.)

In the first special ground of the motion for a new trial it is contended that the court erred in failing to charge the jury upon the respondent's sole and only ground of defense, namely, "that he had ceased to drink any intoxicants for months before the charges" were brought against him, and that "at the time he was charged and tried and for months before that [time] he was leading a sober and correct life." In reference to this contention the most that the evidence showed in favor of the respondent was that he had led a sober and correct life for some four months next preceding the trial.

The mere good conduct or reformation of the respondent would constitute no defense for past offenses, and the only question is whether or not the proceeding was barred by limitation. There seems to be no statute of limitations in this State which could by any construction be made applicable to a proceeding of this nature, and certainly there is none which could be invoked as a bar after a period of only four months. It is generally held that no such defense can be interposed against the disbarment or suspension of an attorney, and also that the courts will not establish a limitation except, perhaps, in case of a stale complaint. An unreasonable delay in the presentation of a charge might prevent its being considered by the court, but there would be no issue of fact as to laches where the alleged misconduct terminated only a few months before the proceeding was instituted. Civil Code (1910), § 4369; State Medical Board v. Stewart, 46 Wash. 79 (89 Pac. 475, 11 L. R. A. (N. S.) 557, 123 Am. St. 915, 13 Ann. Cas. 653); State Bar Commission v. Sullivan, 35 Okla. 745 (131 Pac. 703, L. R. A. 1915D, 1218); 6 C. J. 601, and cit.

The respondent further contends that the court erred in charging the jury as follows: "The court instructs you that it is the duty of a lawyer to so demean himself as a lawyer, both in the court-house and outside of the court-house, as not to bring reproach upon the profession—not to be guilty of such conduct, in the court-house or out of the court-house, that if it were practiced generally by members of the bar, that it would be a public reproach to the profession. Therefore, if you believe in this connection that the defendant has been guilty of becoming so constantly drunk upon the streets of Atlanta or the public thoroughfares of the State that

he has been arrested because of such drinking constantly, and frequently carried before the recorder's court of Atlanta charged with such drunkenness upon the public streets, and if you should believe that he has been frequently tried there for such misconduct and convicted for such misconduct numerous times and fined for such misconduct numerous times, and in some instances sentenced to the stockade for such misconduct, then the court instructs you that his conduct has been such as to be offensive and objectionable to both the court and to the bar, and it would be your duty to find for his disbarment on the ground of such misconduct as a lawyer; the law being that he must conduct himself in such a way as not to bring reproach upon the profession or discredit to the court, where, as a lawyer, he would be expected to appear and represent clients."

The complaint is that the court here instructed the jury that certain acts were offensive and objectionable to both the court and the bar and would constitute ground for disbarment, whereas, in order to justify disbarment, the acts must have been such as to render the respondent a nuisance to the court, or to the members of the bar, or to the public. It is further contended that the charge invaded the province of the jury to determine whether the acts referred to would render the respondent a nuisance, so as to subject him to disbarment.

The Code enumerates several grounds for disbarment and declares that "an attorney must be removed . . for indecent behavior in or out of the court-house, whereby he becomes a nuisance to the court, his brother members of the bar, or the public." Civil Code (1910), § 4967 (4). See also §§ 4966, 4983. There is no express provision that an attorney may be disbarred for misconduct which is merely "offensive and objectionable" to the court and to the bar, but even assuming that the quoted provision is the only standard by which the present case is to be determined, we think the court's charge was in substantial accord with the rule as thus expressed. The word "indecent" is defined as unseemly, unbecoming, indecorous, or as unfit to be seen or heard; and according to the high standards of conduct which the members of the legal profession must exemplify and maintain, it is most unseemly and unbecoming for an attorney to be so frequently and constantly drunk upon the public thoroughfares that he is repeatedly arrested and carried before a court in which he is accustomed to practice his profession,

and there charged with and convicted of public drunkenness, with the result that on numerous occasions fines are imposed upon him and in other instances he is sentenced to imprisonment for such misconduct. Not only should conduct of this sort be declared to be "indecent behavior," but it should be held to be "offensive and objectionable" to both the court and the bar, and this is but a different way of saying that the offender by such conduct makes of himself a nuisance to the court and to his brethren of the bar, meaning that which is offensive or obnoxious.

Indecent behavior under this statute is not the same thing as "indecent condition or acting" under the penal statute against public drunkenness. Penal Code (1910), § 442; Ga. L. 1912, p. 78. Also the word "nuisance" must be given a different meaning from that stated in the Civil Code, § 4457. The lawyer is an officer of court and a minister in the temple of justice, and the rules in reference to his conduct must be interpreted with due regard for the honorable position and office which he occupies, as distinguished from the standards to be observed by the general public. Whatever may be the rule as to disbarment for professional misconduct, the acts referred to in the court's charge as quoted above can not be separated from the respondent's character and profession as an attorney, since it appears, without dispute, that he was tried, convicted, and sentenced on numerous occasions in one of the very courts in which he was accustomed to appear as attorney in the representation of others. Nor do we place our ruling upon a single act or conviction. The evidence conclusively established a course of conduct in which the respondent made repeated public exhibition of his lack of self-control and demonstrated before the court and the bar his unfitness to exercise the privileges and responsibilities of an attorney.

But even assuming that the trial court did not intend to submit the case upon the statute of this State as to indecent behavior amounting to a nuisance, we must still approve the charge. Georgia is a common-law State, and it was the rule at common-law that the courts had the inherent power to admit attorneys to the bar, with the right to disbar them for sufficient cause, and it is generally held that the statutes do not limit the general powers of the court over attorneys, and that attorneys may be removed for other than statutory grounds. In re Wilson, 79 Kan. 450 (100 Pac. 75) ;

In re Elliott, 73 Kan. 157· (84 Pac. 750) ; Ex parte Wall, 107 U. S. 265 (2 Sup. Ct. 569, 27 L. ed. 552) ; State v. Cannon, 196 Wis. 534 (221 N. W. 603) ; State v. Cannon, 199 Wis. 401 (226 N. W. 385).; 37 C. J. 580, 584. The statutes of this State in relation to disbarment do not appear to be exhaustive, and it is our opinion that an attorney may be disbarred for other grounds besides those enumerated in the Code. In this view, the court did not err in charging the jury that the course of conduct referred to would render the attorney offensive and objectionable to the court and to the bar and would constitute ground for his disbarment. Compare *Propper* v. *Owens,* 136 *Ga.* 787 (72 S. E. 242) ; *Jones* v. *McCullough,* 138 *Ga.* 16 (74 S. E. 694).

The respondent's drunkenness can not be accepted as a legal excuse for the other misconduct which may have been occasioned thereby. Penal Code (1910), § 39; *Strickland* v. *State,* 137 *Ga.* 115 (72 S. E. 922).

It is not improper for the trial court to direct a verdict in favor of disbarment where such a verdict is demanded by the evidence. Wernimont v. State, 101 Ark. 210 (142 S. W. 194, Ann. Cas. 1913D, 1156). Under this ruling there is no merit in the one other exception to the charge of the court.

■ Moreover, it is our further opinion that the evidence in this case demanded the verdict and judgment of disbarment, and this irrespective of the fact that the respondent was several times tried for and convicted of drunkenness and was in some cases required to do service in the stockade. In this view, however, we do continue to consider the question of his habitual intoxication, though not by itself but in connection with other facts now to be stated. It appears from the respondent's own testimony that he was employed and paid a fee to represent a defendant in the criminal court of Atlanta, and that although he was aware that the case would be called for trial on a certain day, he became so intoxicated that he was arrested and was imprisoned at the time of the trial. Not only this, but he telephoned to the assistant solicitor and asked for a continuance of the case upon the ground that he was sick, not disclosing his true condition. Whether or not the truth would have made any difference toward obtaining a continuance, it still remains that he misrepresented the facts to a brother lawyer, and also that his client was unrepresented and pleaded guilty in his absence.

The respondent's testimony further showed that a colored woman employed him to represent her son, who was under arrest for some alleged offense, and that, being informed by the mother that the son would lose his job if his employer learned of his having been arrested, the respondent caused the mother to report that the boy was sick. In this transaction he was acting in a professional capacity and caused the practice of a deception by the woman who had employed him. On another occasion a fellow member of the bar called at his office to confer with him about a check which he had executed and upon which payment had been refused. The attorney held the check out for his inspection and he snatched it and tore it to pieces. He says that he was mad because the check was given in part for whisky and was postdated, and the payee had agreed not to present it immediately; also that he was intoxicated. In one sense this was a private transaction, but the respondent was also a lawyer and knew that he was dealing with a member of his profession who approached him in that capacity. In explanation of one of the charges the respondent testified that on a certain night he went into a part of the city inhabited by colored people, for the purpose of making some collections, and that, because he considered it dangerous to be in that vicinity at night without protection, he carried a concealed pistol. The point here is that, although he was engaged in the professional conduct of making collections either for himself or for some client, he allowed the negroes to apologize to him by furnishing him liquor upon which he became intoxicated. He was arrested for drunkenness, and in this way his possession of the pistol was discovered.

The respondent himself has thus described four transactions in which he appears to have been guilty of such professional misconduct as would render him unfit to remain as a member of the bar. In re Macy, 109 Kan. 1 (196 Pac. 1095, 14 A. L. R. 848); 6 C. J. 588; 3 Am. & Eng. Enc. Law (2d ed.), 302.

While the charges as to these transactions were not presented by the petition from the exact standpoint from which we have considered them in view of the respondent's testimony, the petition could have been amended so as to present them in this light, and since the respondent gave voluntary testimony in regard thereto and since a verdict was returned in favor of the petition, it is immaterial that the complaint may not have proceeded upon the exact

theory developed by the evidence. *Baker* v. *State,* 90 *Ga.* 153 (15 S. E. 788) ; *Napier* v. *Strong,* 19 *Ga. App.* 401 (91 S. E. 579). At any rate, the respondent can not well complain of a variance between the pleadings and the proof where it relates only to issues injected voluntarily by his own testimony.

■ The petition was drawn in the form of a single count, although alleging several grounds which were asserted as causes for disbarment. In these circumstances it was unnecessary for the court to instruct the jury to specify in their verdict upon what grounds or causes they should predicate their verdict in case of a finding in favor of disbarment, nor is the general verdict in favor of the relator as returned subject to attack upon the ground that it did not contain such specification. *Baker* v. *State,* supra.

Before concluding we are constrained to say that if the respondent's misconduct in other transactions was influenced only by intoxication and he has succeeded in overcoming his disposition to inebriety and is now living a correct and sober life, he is to be commended for his resolution and reclamation. More than this, he is entitled to the good will and encouragement of his fellow citizens. On the other hand, the mere fact that he has reformed and has demeaned himself in a proper manner for a period of only a few months would not relieve him from the penalty of disbarment, but his remedy would be an application for reinstatement at the proper time. Civil Code (1910), § 4968; 6 C. J. 615.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*