(No. 12141.—Rule discharged.)

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* LEON A. BEREZNIAK, Respondent.

*Opinion filed April 21, 1920.*

1. DISBARMENT—*what advertising is unethical and unprofessional.* Advertising by an attorney by means of the publication and distribution of a diary or calendar containing extracts from letters and testimonials laudatory of the attorney, or by the distribution of souvenir post-cards on which a picture of the attorney with his address and "best wishes" are printed, is unethical and unprofessional.

2. SAME—*what is unprofessional conduct.* Unprofessional conduct is that which violates the rules or ethical code of a profession or such conduct as is unbecoming a member of a profession in good standing.

3. SAME—*extent to which attorney may advertise by circulation of business cards.* Advertising by the publication and circulation of ordinary business cards is not *per se* improper, but such cards should be limited to the statement of the attorney's name and location and his specialty in the law, if advertising such specialty is not prohibited by law, and such cards may refer to responsible persons for information as to standing and responsibility of the attorney.

4. SAME—*extent to which an attorney may advertise in publications.* An attorney may advertise by the insertion of ordinary business cards in publications circulated among lawyers and business men or in publications in which the names of attorneys are listed, provided no improper contract is exacted of their subscribers by the publishers, or by the insertion of such a card in a local newspaper, if unaccompanied by self-laudatory statements by the attorney or the publisher, and provided such advertisements do not contain more information than ordinary legal business cards should give.

5. SAME—*canon 27 of State Bar Association, on ethics of advertising, is to be commended.* Canon 27 of the Illinois State Bar Association, which sets forth fully the class of advertisements by attorneys that is objectionable, unethical and unprofessional, is to be commended although it does not have the binding force of a statute.

INFORMATION to disbar.

JOHN L. FOGLE, (CHARLES H. HAMILL, of counsel,) for relator.

292–20

Jacob E. Dittus, (Ode L. Rankin, of counsel,) for respondent.

Mr. Justice Duncan delivered the opinion of the court:

An information to disbar respondent was filed at the April term, 1918, of this court by the Chicago Bar Association. Respondent filed his answer at the June term, 1918, and the case was referred to Charles C. Stillwell as commissioner to take and report the proofs and to make findings and recommendations. His report has been filed and no exceptions thereto have been taken by either party. No evidence was transmitted with his report. The cause stands for decision upon the correctness of the legal conclusions drawn by the commissioner from the facts reported by him.

The commissioner has found the facts to be substantially as follows: Respondent was licensed in Illinois as an attorney at law about December 10, 1913, and has since that date been actively engaged in the practice of law in Chicago. He was born in southern Russia in 1873, graduated at the Imperial University in Petrograd and came to the United States in 1892 as the representative of Russian newspapers at the World's Fair. He was admitted to the Indiana bar in 1907 and practiced law in Indianapolis, Crown Point and Hammond for nearly six years. After his admission in this State he began to specialize as a legal adviser of theatrical people, since which time his practice has been almost wholly confined to members of that profession. In January, 1916, he published and circulated among the members of that profession a diary and daily route book. The book contained a large number of blank pages, a calendar for 1916 and 1917, useful information, such as rates of postage, names of Presidents and legal holidays in various States, and at the bottom of the blank memorandum pages were printed extracts from statements, letters and testimonials laudatory

of respondent and his services as an attorney. The title page contained the following:

"Published by
LEON A. BEREZNIAK
Attorney for the Profession
105 West Monroe Street
Chicago."

. The second page had a likeness of the respondent, below which appeared the following:

"LEON A. BEREZNIAK
Lawyer to the Profession
105 W. Monroe St., Chicago, Ill."

The preface or introduction to the book, signed by the respondent, contains the following: "Of course, I have an object in distributing this little book, which only goes to the profession. I wish you to know me better in case you have need of me, and I wish to know you also. * * * I know you will permit me a word or two about myself. I specialize largely in theatrical law—for there is such a thing, the outgrowth of the many unusual questions which have arisen because of the growth of the profession. I am also engaged in general practice, handling all matters requiring legal services in all its branches. As for my qualifications, I have been admitted to the bar of Illinois and Indiana and have practiced in both States over a considerable number of years and have also been admitted to practice in the several United States courts. * * * As I said above, the primary object, upon my part, of this little book is to make your acquaintance, * * * and I wish further to assure you that when you are in need of the counsel of a lawyer you are perfectly free to call upon me, either personally or through correspondence, and consult me without charge or obligation to you. This is no fake offer. I wish to widen my already broad acquaintance in the theatrical field, since it is there that the bulk of my practice lies. I wish your good will, knowing that it will mean

your patronage in time of need and knowing further that I shall acquit myself not only to your satisfaction but to your high pleasure whenever so employed."

In September, 1917, the respondent caused to be printed and published a little book entitled, "The Berezniak Diary and Daily Route Book for 1917-18," which he caused to be circulated and distributed in Chicago and throughout the United States generally, among the members of the theatrical profession only. It was gotten up upon the same general plan as his former book but was somewhat more elaborate. In the preface or introduction is found the following printed matter: "This is the second edition of what I am proud to call the Berezniak Diary and Route Book, and I hope it will prove an improvement over its modest predecessor. * * * The theatrical profession, living largely in a world of its own, has most emphatically a body of law of its own. There are unusual contracts, pertaining almost wholly to this profession, to be drawn and construed. There is the domestic side of theatrical life to be considered. These are all things that require not alone a knowledge of this branch of the law but a thorough familiarity with the profession itself, in order that the practitioner may specialize with the greatest degree of success in theatrical law. * * * I specialize in theatrical law almost to the exclusion of all other branches of the practice, save those which are incidental to this specialty. * * * Therefore, while this little book is, in the main, offered for the purpose of giving something useful to the members of the profession from which I derive my livelihood and is intended to be a constant reminder of me to them, it has— I may as well admit it—also the purpose of bringing me to the attention of those who do not already know me and of further commending me to those who do. I wish actor clients. I know I can serve them more intelligently than the average lawyer, and I am glad to be able to refer with confidence to a host of them whom I have already served.

In these pages you will read some short and unsolicited testimonials from these."

The following are a few of the printed extracts from statements and letters of other parties found in these two books in the nature of testimonials, the names of the authors being omitted: "Berezniak is one of the few lawyers who look for the interest of the client first and the money second." "I consider that the theatrical artist who has Leon A. Berezniak as his attorney has already won half the fight." "His long and successful legal career has given Leon A. Berezniak well-deserved fame among theatrical artists." "Wrongs of theatrical artists are usually quickly righted if Leon A. Berezniak is their lawyer." "As the legal mentor to the people of the stage, Leon A. Berezniak is now above rivalry." "The artist whose lawyer is Leon A. Berezniak may count confidently on winning." "Berezniak is the legal Gibraltar of the theatrical profession." "No theatrical artist should ever sign a contract which attorney Berezniak disapproves." "'Forehandedness' and 'preparedness' are synonyms, and they're both synonymous with 'Berezniak' advice."

The respondent also caused to be printed and circulated through the United States mails, to the members of the theatrical profession, printed post-cards containing photographic views on the back thereof and on the face thereof a likeness of respondent and the following printed matter:

"Here's a little remembrance of your engagement in Chicago. Take it with the sincere good wishes of
LEON A. BEREZNIAK
Lawyer to the Profession
105 W. Monroe Street, Chicago
Telephone Central 5374."

He also caused to be printed and circulated among the members of the theatrical profession a book of "I. O. U.'s," containing on the back of each printed matter similar to that on the face of his printed post-cards, and also inserted a card in certain papers, magazines or publications which cir-

culated among the members of the theatrical profession, as follows: In 1915, in twenty-four weekly issues of the *Vaudeville Breeze,* published at Chicago; in 1918, in five issues of the *New York Star,* published in the city of New York; in 1916, in twenty-two issues of the *Vaudeville,* published at Chicago. This is the card so published:

> "LEON A. BEREZNIAK
> Lawyer to the Profession
> 1348 First National Bank Building
> Telephone Central 5374
> The Man Who Solves Your Troubles and Keeps
> Your Mind Easy."

When respondent was called before the grievance committee of the relator in reference to said advertisements he stated that he approved the canons of ethics of the American Bar Association and of the State Bar Association of Illinois but that he did not consider that obtaining a clientage through the means of advertising he had pursued was unlawful. He also stated that he had found advertising to be about the only means by which he could get a clientage. He has done no advertising since he was called before the grievance committee except the advertisement in the *New York Star.* He states that he is willing to accept the judgment of the court on the question of advertising as to what is proper and what is improper, and that he is willing to cease advertising altogether and does not propose to continue it in any way. He has acquired as a specialty a practice among members of the theatrical profession. He is a man of good moral character and has established a good reputation for fair dealing with his clients. There is no evidence that he has sought employment in divorce or matrimonial litigations or made any effort whatever to obtain patronage of that character except the one bit of evidence printed in his route book in 1917, "There is the domestic side of theatrical life to be considered." There is no charge in the information that respondent was advertising for employment in divorce or like litigation, and

the commissioner finds that by the use of the quoted words respondent was not advertising for such employment. The commissioner also finds that advertising for patronage of theatrical people, to be in the highest degree successful, must be similar in character to the advertising that they themselves employ,—that is, gorgeous and self-laudatory advertisements; that there are from two to four lawyers in the city of Chicago, and a limited number in other cities in the United States, who are specialists and practice chiefly among members of the theatrical profession; that it is the custom of such lawyers to advertise by means of unique advertisements, in a manner similar to that of respondent; that it is the practice of so-called commercial lawyers in Chicago and in the State of Illinois and throughout the United States to place advertisements in certain law directories, lists of bonded attorneys, attorneys' quarterlies and other publications of like character; that in addition to simply having their names printed in such lists many of the attorneys have advertisements which frequently cover an entire page in such publications; that the publishers of some of those lawyers' lists exact contracts from their subscribers whereby the subscribers are prevented from sending their legal business to attorneys not subscribers to or advertisers in such directories; that some of the attorneys in the city of Chicago have published their advertisements in legal newspapers and in entertainment programs and programs for church bazaars and like entertainments; that there are lawyers practicing their profession in Chicago who are principally or wholly employed as attorneys for plaintiffs in suits for damages for personal injuries; that such attorneys are frequently employed through another form of advertising,—by having the injured person visited by a representative, whose business it is to set forth the special aptitude of such attorneys and thereby obtain a contract of employment for them, usually on a contingent fee, payable only out of money actually collected by them. The com-

missioner further finds that advertising of the character used by respondent has a tendency to lower the estimation in which the profession of a lawyer is held by the general public, even though it contains no mis-statement of fact and is not resorted to for the purpose of misleading or victimizing the public but only for the purpose of bringing business to the advertiser. His conclusions are that to justify the court in disbarring respondent the facts must be strong, clear and convincing that he purposely and willfully violated the law in doing the things that are charged against him in the information,—advertising for law business in the manner aforesaid; that canon 27 does not constitute a law and has force only in so far as it is a declaration of the law as already otherwise existing and that it is not a part of the law of this State; that such advertisement of respondent does not, of itself, amount to a violation by him of any law of this State or amount to malfeasance in his office as an attorney at law; that the facts do not call for the severe penalty of disbarment or the lesser penalty of suspension from practice, but that such facts do tend to show undignified conduct and have a tendency to lower the estimation of the profession of the lawyer in the eyes of the public and call for notice to respondent not to continue or repeat such advertisement.

The information in this case specifically charges the respondent with advertising for business as a lawyer by the identical means and manner reported by the commissioner, and that he is for that reason guilty of unethical and unprofessional conduct for which he should be disbarred. There is no dispute about the facts, and it is practically unquestioned by respondent that the charge is fully proven. It cannot be gainsaid that such actions of respondent are calculated to tarnish the good name and fame of the legal profession and that they are, in fact, unethical and unprofessional. The Standard Dictionary defines unprofessional conduct as that which violates the rules or ethical code of

a profession or such conduct as is unbecoming a member of a profession in good standing. In *In re Schwartz,* 161 N. Y. Supp. 1079, the Appellate Division of the Supreme Court of New York held that an attorney who by the use of letters, circulars and newspaper advertisements solicited patronage for his collection business, situated in several large cities of the United States,—a practice recognized as unethical by the 27th canon of the code on ethics adopted by the New York State Bar Association against advertising by the profession,—was guilty of professional misconduct, for which he was severely censured and warned that a repetition thereof would lead to his disbarment.

The 27th canon of ethics referred to in the case just cited and also in the commissioner's report, and which has been adopted by the Illinois State Bar Association, is as follows:

"27. *Advertising, direct or indirect.*—The most worthy and effective advertisement possible, even for a young lawyer, and especially with his brother lawyers, is the establishment of a well-merited reputation for professional capacity and fidelity to trust. . This cannot be forced but must be the outcome of character and conduct. The publication or circulation of ordinary, simple business cards, being a matter of personal taste or local custom, and sometimes of convenience, is not *per se* improper, but solicitation of business by circulars or advertisements, or by personal communications or interviews not warranted by personal relations, is unprofessional. It is equally unprofessional to procure business by indirection, through touters of any kind, whether allied real estate firms or trust companies advertising to secure the drawing of deeds or wills or offering retainers in exchange for executorships or trusteeships to be influenced by the lawyer. Indirect advertisement for business by furnishing or inspiring newspaper comments concerning causes in which the lawyer has been or is engaged or concerning the manner of their conduct, the magnitude of the lawyer's positions, and all other like self-

laudation, defy the traditions and lower the tone of our high calling, and are intolerable."

In *People* v. *MacCabe,* 18 Colo. 186, the court used this language: "The ethics of the legal profession forbid that an attorney should advertise his talents or his skill, as a shop-keeper advertises his wares." The same thing is stated, in substance, in Carter's Ethics of the Legal Profession, on pages 59 and 60. It is further therein stated that it is considered grossly unprofessional to advertise under such headings as "A Bad Debt Collector," or "No Charges if Not Successful." The same doctrine is laid down in Thornton on Attorneys at Law, secs. 562, 845.

In *Ingersoll* v. *Coal Creek Coal Co.* 117 Tenn. 263, it was held by the Supreme Court of Tennessee that a firm of attorneys were not entitled to recover attorneys' fees for their services where it appeared that they had obtained the cases by personal solicitation of the clients through a representative, although the contract of employment was free from fraud or misrepresentation and no infidelity to the interests of their clients was imputed to them. The decision of the court in that case was placed upon the distinct ground that the conduct of the attorneys was contrary to the character of the profession and incompatible with the faithful discharge of their duties as attorneys, and to allow recovery under such circumstances is opposed to a sound public policy and to the proper and decorous administration of the law. We are in entire accord with that decision. Those attorneys are commonly known as "ambulance chasers," and had obtained some forty suits for personal injuries growing out of a terrible mine explosion in which 150 or more men had lost their lives or were horribly injured and out of which one hundred and fifty or more suits were brought a short time thereafter, all of them being obtained by solicitation in the same way, through paid representatives or representatives who were to receive a certain per cent of the amount recovered. The solicitations

were generally made to horror-stricken and damaged relatives, who were strangers to the solicitors, and were made in open competition and in broad daylight. Such conduct by attorneys is reprehensible in the extreme and no court should recognize for a moment their right to recover fees under such circumstances. An attorney who stirs up or secures litigation in that manner ought to be disbarred. Any conduct of an attorney at law that necessarily tends to bring discredit upon his profession and upon the courts is an abuse of the privilege secured to him by his license. The grant of a license to practice law is on the implied understanding that the party receiving it shall in all things demean himself in a proper manner and that he will abstain from such practices as cannot fail to bring discredit upon his profession or upon the courts. This court has the power by express statute to grant a license to practice law, and has an inherent right to strike the name of an attorney from the roll for sufficient cause shown, upon information. (*People* v. *Goodrich,* 79 Ill. 148.) To constitute such sufficient cause the conduct of an attorney need not necessarily amount to a crime or a misdemeanor under our statute. The advertisements of respondent are very obnoxious and disgusting, not only because they are gotten up after the manner of quack doctors and itinerant vendors of patent medicines and other cure-alls, but because of the fact that they contain statements that cast reflections upon the common honesty, proficiency and decency of the profession, generally, of which he insists he is a distinguished member. Anyone who is knowingly guilty of such conduct as a lawyer ought to suspect that he is laying himself open to the charge of unprofessional conduct, which, if persisted in, would lead to his disbarment.

We are disposed to agree with the general conclusion of the commissioner that the severe penalty of disbarment or suspension ought not to be imposed upon respondent in this case, but we are moved to such conclusion by the ex-

tenuating facts and circumstances reported by the commissioner and not because of the failure of relator to prove respondent guilty as charged. The proof is unquestioned that he was born in a foreign country and that many others of the profession in Chicago are guilty of like misconduct in their profession. That is no excuse for any other attorney following a like guilty course, but it was perhaps the cause of his erroneous conception of what was right and proper in the manner of advertising for business, and inasmuch as he has expressed a willingness to accept the judgment of the court on the question of advertising as to what is proper and what is improper, and is willing to cease and has ceased his improper methods of advertising and bears a good reputation for honesty and fair dealing, we think the publicity with which he has been afflicted by this prosecution and the severe reprimand given him in this decision ought to be the full measure of punishment administered.

We are asked to state definitely the rules that this court will follow or adopt in cases of information to disbar in such cases as this, as it is one of first impression in this court. We cannot at this time undertake to cover fully by rule all the instances in which an attorney might be disbarred, suspended or censured for unprofessional conduct in advertising. We are disposed, however, to say that all forms of advertising by attorneys are not to be understood as forbidden or to be considered as unethical or unprofessional. Canon 27 aforesaid does not entirely forbid advertising, but recognizes the publication and circulation of ordinary business cards as being a matter of convenience and not *per se* improper. Such cards, it is clear, ought to be limited to the simple statement of the attorney's name and location, and the further statement of his specialty in the law, if he has one, provided the advertisement of such a specialty is not prohibited by law. We can see no objection to such a card making reference to responsible persons

through whom the standing and responsibility of the attorney may be learned by parties in need of such an attorney. We see no impropriety in attorneys advertising, to the extent already indicated, in any of the publications that are circulated among lawyers and business men who may require the services of an attorney in a foreign city or State, and in which listed attorneys are given, provided no improper contract is exacted of the patrons by the publish-. ers. We see no impropriety even in a lawyer publishing a card giving the simple information aforesaid in any legal publication, or even in a local newspaper, if unaccompanied by self-laudatory statements by the attorney or the newspaper editor or proprietor. Such publications, however, should not go beyond the simple information aforesaid.

Canon 27 aforesaid does not have the binding force of a statute in this State, as indicated by the commissioner, but it does set forth very fully the class of advertisements and solicitations of business that is objectionable, unethical and unprofessional, and is most commendable in all other respects. Such objectionable advertising and solicitation is set forth in the last three sentences of that canon, and which for that reason is set forth in full in this opinion. We have also purposely set out most of the facts in this case in great and perhaps unnecessary detail, because of the fact that it has been brought to our notice that there are a number of like offenders who should be made to understand the gravity of this charge and the gravity of other offenses of like nature reported by the commissioner, and who must take warning that such conduct cannot and will not be tolerated by this court.

If respondent shall hereafter refrain from all improper methods of advertising as herein indicated we will not take further cognizance of his actions, except to pronounce his conduct as very improper and as deserving very severe censure by this court.    *Rule discharged.*