25073. DeKRASNER *v.* BOYKIN.

Decided June 30, 1936.

*Norman DeKrasner,* for plaintiff.

*John A. Boykin, solicitor-general, J. W. LeCraw, J. A. Branch, R. R. Arnold,* and *Marion Smith,* for defendant.

Guerry, J. On June 13, 1935, there came on for hearing before three judges of the superior court of Fulton County, sitting in banc, the case of Norman DeKrasner *v.* John A. Boykin, being a proceeding in which the movant prayed the disbarment of the respondent. It appears from the bill of exceptions in this court that both sides announced ready for trial. After some preliminary colloquy between counsel and the court, the movant presented a

motion to disqualify one of the judges therein sitting, on the ground of some unusual action of his in setting the case for hearing. This motion was overruled. The movant then presented to the court a motion to enter judgment of disbarment against the respondent, for his failure to file answer on or before June 10; and this motion was overruled. It appears that the case was set for hearing by rule nisi on June 10, but was expressly extended to June 13, by proper order of the court. Counsel then presented to the court a motion for continuance, and the motion was overruled. Counsel thereupon tendered to the court a bill of exceptions upon the refusal to enter judgment of default, and the court instructed the movant to preserve his exceptions pendente lite, and to proceed with the merits of the accusation made against the respondent, which the movant refused to do. The court thereupon issued an order of dismissal of the proceeding, and further said: "Now, Mr. DeKrasner, you have been convicted by a jury in this court of charges which, if true, would render you unworthy to appear before this court as a lawyer. That case was prosecuted to conviction by Mr. Boykin, the solicitor-general of this circuit, who had the backing of the bar association in this prosecution. Thereafter you asked the court to appoint a solicitor pro tem., in order that you might prefer charges of a criminal nature against Mr. Boykin. The court appointed a solicitor pro tem., and gave you full opportunity to present those charges to the grand jury of this county; and the grand jury heard them, and refused to return a true bill, denounced the prosecution as malicious, and commended Mr. Boykin for the work he has done in the prosecution of certain cases, among which was your case. You have now presented to this court a petition for disbarment of Mr. Boykin, based substantially on the facts that you sought to have him indicted on; and the court set the case down specially for a hearing, and advised you in advance that the case would proceed to a determination on this date. After being commanded by the court to proceed to offer evidence as to the serious charges you have made against Mr. Boykin, you have refused to do so, and the court has now dismissed the petition. The court will immediately sign an order suspending you from the practice of law in Georgia until the serious charges against you have been ultimately disposed of, and it has been determined whether or not you shall be retained

on the list as one of the lawyers of the Georgia bar. That order will be immediately signed, and you will not be permitted to appear as counsel in any case until these serious charges have been finally disposed of by the court. The court has not taken this action ill-advisedly; but the very nature of your attitude toward the court, and your very method of presenting these charges, and your refusal to proceed with them, and your efforts to lay a foundation for a technical procedure, and not a procedure on the merits of the case, are sufficient, in my personal opinion at least, to justify this suspension of you from the practice of law before this bar. That order will be promptly signed, and you are now suspended, with no right to address any court on behalf of anybody, unless it is your personal case."

The court thereupon passed the following order: "On this the 13th day of June, 1935, there came on to be heard before the undersigned three judges of this court the case instituted by the above named Norman DeKrasner, purporting to be a proceeding in behalf of the State on his relation against John A. Boykin, being case No. 107134, seeking to obtain the disbarment of the said John A. Boykin. When the case was called for hearing, the said DeKrasner announced ready, and thereupon moved the court to enter a judgment of disbarment against the said John A. Boykin by default and without permitting a hearing to the said John A. Boykin on the merits of the charges, which motion the court overruled; an answer having been filed by said John A. Boykin. Thereupon the said DeKrasner moved a continuance of the case on grounds which in the opinion of the undersigned judges were not only unfounded but wholly frivolous. Thereupon the court overruled the said motion to continue, and directed the said DeKrasner to proceed at once to submit to the court the evidence on which he had undertaken to bring in the name of the State the grave charges against the member of the bar who was made the respondent in the petition filed by him. When the said DeKrasner refused to proceed to submit to the court such information, the court warned the said DeKrasner that he was under conviction of grave charges himself, according to the records of this court; that he had assumed to file a petition in the name of the State, making grave charges against a member of the bar of the State; and that the court positively directed him, he being still a mem-

ber of the bar and an officer of the court, to proceed to put before the court the evidence and information on which he had assumed to take the aforesaid steps. Thereupon the said DeKrasner, notwithstanding the positive command of the court and notwithstanding the warning of the court, positively and absolutely refused to proceed, and refused to lay before the court any information or evidence in support of his said charges. The court now adjudges that the action of the said DeKrasner constituted a grave contempt of this court, and presented a serious dereliction in the duty due by a member of the bar to the court. The court further adjudges that his said conduct in said cause shows him guilty of deceit and wilful misconduct in his profession. The court further adjudges that the said conduct constituted indecent behavior in the court-house, whereby he became a nuisance to the court and to his brother members of the bar and to the public. It further appears from the records of this court, as well as having been stated by the said DeKrasner in the aforesaid hearing, that the said DeKrasner is now under conviction in this court for a crime involving moral turpitude, as to which conviction motion for a new trial has been filed and has not yet been heard. It further appears from the records of this court that the said DeKrasner has heretofore and after his conviction, he having been prosecuted therein by the said John A. Boykin as solicitor-general, filed an affidavit that the said John A. Boykin was guilty of an indictable offense, and caused the appointment of a solicitor-general pro tem. to prepare and present the said charges to the grand jury, the said charges being substantially the same as those thereafter set out by the said DeKrasner in his petition for disbarment against John A. Boykin. The court appointed an honorable and able member of the bar to act as solicitor-general pro tem., and the said solicitor-general pro tem. laid the whole matter before the grand jury. The grand jury returned a no bill, and returned a special presentment adjudging that the said DeKrasner's action had been malicious, and that the said John A. Boykin was to be highly commended. It further appears from the records of this court that there is pending a disbarment proceeding in this court against the said DeKrasner. In consideration of all of the foregoing it is now ordered and adjudged that the license and rights of the said Norman DeKrasner to practice law in this

State, or to appear as an attorney at law before any court in this State, be and the same is hereby immediately suspended, the said suspension to continue until the final determination of the said proceedings for his disbarment."

In the bill of exceptions before this court DeKrasner assigns error upon the order of suspension, on the ground that it was void as being in conflict with, repugnant to, and violative of par. 23 of sec. 1 of art. 1, of the constitution of this State (Code, § 2-123), which provides that "The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided," in that there is no legislative authority for a judge to suspend a member of the bar pending disbarment proceedings. He further assigns error upon the order of suspension, on the ground that a judge has no authority to suspend an attorney for an alleged contempt, and "says that he was not guilty of contempt of court, and his failure and refusal to proceed with the trial of said case did not . . constitute a contempt of court." The bill of exceptions contains a further assignment of error upon the refusal of the judges to certify the bill of exceptions tendered by DeKrasner until he had specified, as material to a complete understanding of the errors here complained of, certain exhibits constituting an indictment against DeKrasner, with verdict of guilty found by the jury; order appointing a solicitor-general pro tem. to investigate charges brought against John A. Boykin by DeKrasner, and entry of "no-bill" thereon, with a special presentment finding the prosecution to be malicious; the suit for disbarment of DeKrasner brought by John A. Boykin, solicitor-general; and the answer of John A. Boykin in the proceeding by DeKrasner to disbar him. These exhibits are alleged to be material to a complete understanding of the errors complained of, "by the direction of the court." To this bill of exceptions the court has attached its certificate.

The last exceptions set out are plainly without merit. If the plaintiff in error thought the exhibits unimportant and irrelevant to this appeal, he should have refused so to certify, and asked for a mandamus to compel the judge to certify to the same. Having complied with the order of the court to set them out as exhibits attached to the bill of exceptions, he cannot now except

34

to the ruling refusing to certify the bill of exceptions because they were not contained therein. See, in this connection, Code, § 6-910; *McWilliams* v. *Walthall*, 41 *Ga.* 422; *Holland* v. *Camp*, 41 *Ga.* 424; *Barker* v. *Peoples Loan & Savings Co.*, 178 *Ga.* 464 (173 S. E. 704).

The Code, § 9-501 et seq., provides for proceedings to disbar practicing attorneys, and states the grounds therefor. It is true that there is no statutory provision for the *suspension,* by a judge of the superior court, sua sponte or upon motion, for any length of time, of a practicing attorney. However, we may ask, does this fact render the courts powerless to control the conduct of attorneys and deal therewith, except in the manner provided by statute? Is legislative grant requisite to the exercise of supervisory control of courts over the conduct of attorneys licensed to practice before them? Does the fact that the legislature has seen fit to legislate to aid courts in *disbarment* of attorneys preclude the courts from the exercise of the additional power of suspension? Too much importance can not be attached to the determination of the above questions. There is a continual cry, on the part of the general public, of the law's delays, of the administration of the criminal law, and the part that members of the bar take therein; and in too many instances this criticism can not be held unjust. Courts, to carry out their undoubted right to function as an independent department of government, as ordained by the various constitutions, have many times declared unto themselves certain *inherent powers* independent of legislative grant. These claimed inherent powers have been applied by them to a variety of situations, not connected with and independant of supervisory power over the legal profession. The right to declare a mistrial was said by this court in *Chapman* v. *Conwell*, 1 *Ga. App.* 212 (58 S. E. 137), to be an *inherent right* of the judge of any court where jury trials obtain. In *Pope* v. *State*, 124 *Ga.* 801 (53 S. E. 384, 110 Am. St. R. 197, 4 Ann. Cas. 551), the Supreme Court held that one accused of crime has a constitutional right to be tried in the county where the offense was committed, and can not be deprived of this right by the creation of a new county while the charge is pending against him. "Such a person has a right to demand a trial in the county which embraces the territory where the offense was committed; and although the act creating the

county and the general law of the State may be silent upon the subject of the transfer of criminal cases, under such circumstances the court in which the case is pending has the *inherent power* to order a transfer of the case to a proper court in the new county, and that court has like power to take jurisdiction of the case and carry the same to judgment." Another illustration is *Bradley* v. *State*, 111 *Ga.* 168 (36 S. E. 630, 50 L. R. A. 691, 78 Am. St. R. 157), in which it was held that "The power to punish contempts is inherent in every court of record." For other cases see Ex parte Birmingham, 134 Ala. 609 (33 So. 13, 59 L. R. A. 572); City of New Orleans v. Bell, 14 La. Ann. 214; Belvin v. Richmond, 85 Va. 574 (8 S. E. 378, 1 L. R. A. 807); In re Court Officers, 3 Pa. Dist. 196; In re Janitor, 35 Wis. 410; State v. Davis, 26 Nev. 373 (68 Pac. 689).

Expressed in general terms, "every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction." State v. Townley, 67 Ohio St. 21 (65 N. E. 149, 93 Am. St. R. 636). In this respect there is a difference to be noted between the jurisdiction of courts and their inherent powers. "In constitutional governments, their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. That, however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any sense upon the legislative will." 7 R. C. L. 1034. Research reveals, that, under this theory of inherent or necessary incidental powers, courts have unanimously assumed powers of wide and far-reaching extent over the conduct of members of the legal profession, which include the power to admit, suspend, discipline, or disbar an attorney. Our own court has recently ruled: "Courts have the inherent power to admit attorneys to the bar, with the right to disbar them for sufficient cause, and the statutes do not limit the general powers of the courts over attorneys, and such attorneys may be removed for other than statutory grounds." *Wood* v. *State*, 45 *Ga. App.* 783 (165 S. E. 908). This inherent power over the legal profession is independent of legislative grant. While all courts recognize the right of the

legislature to pass laws to aid them in their visitorial power in this respect, they further assert their right to disregard unreasonable statutory regulations. Among the many cases recognizing the inherent right of courts over attorneys, are: People *v.* Harris, 273 Ill. 413 (112 N. E. 978); People *v.* Berezniak, 292 Ill. 305 (127 N. E. 36); State *v.* Raynolds, 22 N. M. 1 (158 Pac. 413); Chreste *v.* Commonwealth, 171 Ky. 77 (186 S. W. 919, Ann. Cas. 1918E, 122); State *v.* Edmunson, 103 Or. 243 (204 Pac. 619); In re Hilton, 48 Utah, 172 (158 Pac. 691, Ann. Cas. 1918A, 271); In re Bruen, 102 Wash. 472 (172 Pac. 1152); Wernimont *v.* State, 101 Ark. 210 (142 S. W. 194, Ann. Cas. 1913D, 1156); People *v.* Irwin, 60 Colo. 177 (152 Pac. 905); In re Durant, 80 Conn. 140 (67 Atl. 497, 10 Ann. Cas. 539); People *v.* Amos, 246 Ill. 299 (92 N. E. 857, 138 Am. St. R. 239); In re Wilson, 79 Kan. 450 (100 Pac. 75); In re Ebbs, 150 N. C. 44 (63 S. E. 190, 19 L. R. A. (N. S.) 892, 17 Ann. Cas. 592); State Bar Commission *v.* Sullivan, 35 Okla. 745 (131 Pac. 703, L. R. A. 1915D, 1218); In re Egan, 22 S. D. 355 (117 N. W. 874); Bar Association *v.* Casey, 211 Mass. 187 (97 N. E. 751, 39 L. R. A. (N. S.) 116, Ann. Cas. 1913A, 1226); Opinion of the Justices, 279 Mass. 607 (180 N. E. 725, 81 A. L. R. 1059); State ex rel. *v.* Reynolds, 252 Mo. 369 (158 S. W. 671); In re Bar Asso., 109 N. J. L. 275 (160 Atl. 809); Rubin *v.* State, 194 Wis. 207 (216 N. W. 513). These citations are by no means exhaustive of the cases on the subject.

This visitorial power over the members of the bar is, without question, a necessary incident to a court's proper administration of justice of causes coming within its jurisdiction. To purge itself of being surrounded by unworthy and dishonest members of the bar, in the administration of justice, is a duty the court owes not only to its own preservation, but to members of the general public, who are all potential litigants therein, and to those members of the profession who are willing to co-operate and are in sympathy with the proper administration of the law. The court in the present case suspended the movant, sua sponte, for a definite period, that is until disbarment proceedings brought against him are disposed of, because of its knowledge that he had been convicted of a crime involving moral turpitude; and here we might state, by way of parenthesis, that this fact alone, under the Code,

§ 9-501, providing that an attorney may be disbarred "upon his being convicted of any crime or misdemeanor involving moral turpitude. *In either case the record of his conviction is conclusive evidence,*" would be sufficient authorization for the court to enter an order of disbarment, based upon such record, without further notice or process (In re Collins, 188 Cal. 701, 206 Pac. 990, 32 A. L. R. 1062); and this would be true although his conviction was pending on motion for new trial, or on appeal to this court (Ex parte Cohen, 72 Or. 570, 144 Pac. 79), and because of his actions before that court, which are set out in the order of suspension already quoted in this opinion, which they adjudged to be a contempt of the court, a serious "dereliction of duty due by a member of the bar to the court," of deceit and wilful misconduct in his profession, and "indecent behavior in the courthouse, whereby he became a nuisance to the court and to his brother members of the bar and to the public." When one is admitted to the bar in this State, the court adjudicates that he is possessed of the necessary legal qualifications. This adjudication can be nothing less than a judicial act. When he is suspended or disbarred, the court performs a judicial act—it is a judgment of the court. The admission to the bar does not close the door to inquiry as to whether the fair moral and professional character which once existed still continues. Selling *v.* Radford, 243 U. S. 44-46 (37 Sup. Ct. 377, 61 L. ed. 585, Ann. Cas. 1917D, 569).

We have already pointed out that the disbarment proceedings as prescribed in Code, § 9-501, are not exclusive of the methods to be adopted by the court in governing the conduct and actions of attorneys practicing at the bar. Knowing the situation and that a remedy is needed, the trial judges are in the best position to select one. They need not sit passively and await action by some one else; but they may select their own agency for action. The right to practice law, after once admitted, is to be considered a property right, of which one is not to be deprived without notice and a right to be heard; and there can be no doubt that a court is without authority to disbar or suspend an attorney sua sponte, without notice and hearing, except for matters occuring in open court and in the judge's presence, or where it may come within the actual knowledge of the court that an attorney has been convicted of a crime involving moral turpitude, in which

38

case the court may suspend him until proper disbarment action may be taken by the court of its own motion or upon motion of another. All other matters should be heard only after due notice to the offending party of the grounds of complaint against him and an opportunity for explanation and defense. Bradley *v.* Fisher, 13 Wall. 335 (20 L. ed. 646). This procedure is somewhat similar to a summary punishment for a contempt committed in the presence of the court. It is a power which should be exercised cautiously. The movant was present in court when the facts were recited to him; he made no effort to dispute their verity; he had been convicted of a crime involving moral turpitude, of which fact the court had actual knowledge, itself a conclusive ground for disbarment; disbarment proceedings had been instituted against him; he was guilty of conduct in the presence of the court considered by it as a contempt and as action plainly showing movant unworthy of the privileges of the legal profession. Under all of the facts, we do not think the court exceeded its power in suspending the movant, and we are not inclined to interfere with its particular action in the case. It can make no important difference whether or not the movant was or was not actually guilty of a contempt of court. The right of the court to deal with him summarily as an attorney at law depends upon whether or not he has been guilty, in its presence or of its actual knowledge, of such professional or non-professional misconduct as shows him to be an unfit or unsafe person as an attorney. See cases already cited.

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., disqualified.*