CLIFTON *v.* THE STATE.

No. 12484.   FEBRUARY 15, 1939.

*O. C. Darsey* and *Frank L. Forester,* for plaintiff in error.

*M. J. Yeomans, attorney-general, J. P. Dukes, solicitor-general, E. G. Arnall,* and *E. J. Clower,* contra.

REID, Chief Justice.   The defendant was indicted for the murder of his father.   It appears that the deceased, several days before the homicide, rented a filling-station and certain tourist cabins known as "The Pines Camp," which was located in Liberty County, about one mile and a half from Hinesville, Georgia, on State Highway No. 38.   The deceased and the defendant operated the station, and lived together on the premises.   On Friday night, July 9, about 11:15 o'clock, the deceased was found dead, lying face downward on the floor of a cabin back of the filling-station, with a bullet-hole in the back of his head.   Near the body was found a pistol containing an exploded cartridge.   The defendant was immediately arrested on suspicion of murder, and on Wednesday, July 14, he made a full and complete confession of the homicide.   The jury found him guilty, with recommendation.   He excepted to the overruling of his motion for new trial.

■ Before the introduction of evidence the defendant moved to disqualify an attorney appearing as special prosecutor on behalf of

the State, on the ground that he had formerly been of counsel for the defendant. It appears from the evidence on this motion that on July 14 two brothers and an uncle of the defendant called on counsel to employ him to probate the will of the deceased. During this visit the matter of counsel's representation of the defendant at the trial for the murder of his father was discussed, and his employment in this connection was agreed on, save and except the matter of his fee, which he proposed to fix after looking into the facts of the case. On July 20 one of the brothers wrote to the counsel a letter concerning the matter of probating his father's will, and made further inquiry as to what he would charge to represent the defendant at his trial, stating that it was important for him to know, so that he could take it up with his other brother and settle the matter. On July 22 counsel answered, stating that he had talked to Dr. Randall (the defendant's uncle), and "We think best to get the State, judge and solicitor to agree on a life sentence, and, if they won't agree, go before a jury with a mercy plea and get them to give him life. If you all agree with me, I will see what can be done, and my charge without a trial will be reasonable." No further communication was had with this counsel. Thereafter, another attorney having been employed to represent the defendant, the attorney first referred to accepted employment to appear as special prosecutor for the State. It affirmatively appears that he did not at any time consult with the defendant, and that he acquired no information concerning the case from any of the parties or from any investigation made by him as counsel for the defendant. His recommendation to the brother that the defendant plead guilty was made after he read in the newspaper that the defendant had confessed. The judge overruled the motion, and exceptions are taken. The question at hand is whether a new trial should be granted, and it is fundamental that a new trial will not be awarded where it appears that the defendant suffered no prejudice from the ruling complained of.

"The administration of the law should be free from all temptation and suspicion, so far as human agencies are capable of accomplishing that object; and public policy strongly demands that one who has been employed on one side should not be permitted on the other side. It is not sufficient to say that the law will not permit him to disclose any fact which may have been communicated to

him. 'If he knows the vulnerable points in the case, . . there are many ways by which those points might be made available, . . besides disclosing them as a witness.' *Gaulden* v. *State,* 11 *Ga.* 47." People v. Gerold, 265 Ill. 448 (107 N. E. 165, Ann. Cas. 1916A, 636). See generally, on this subject, *Tucker* v. *Murphey,* 114 *Ga.* 662, 665 (40 S. E. 836); *Conley* v. *Arnold,* 93 *Ga.* 823 (20 S. E. 762); *Willamon* v. *State,* 17 *Ga. App.* 775 (88 S. E. 702); *Johnson* v. *Morris,* 27 *Ga. App.* 463 (108 S. E. 810); *Kennedy* v. *Redwine,* 59 *Ga.* 327; Weidekind v. Tuolumne County Water Co., 74 Cal. 386 (19 Pac. 173, 5 Am. St. R. 445); Wilson v. State, 16 Ind. 392; State v. Holstead, 73 Iowa, 376 (35 N. W. 457); Dodd v. State, 5 Okla. Cr. 513 (115 Pac. 632); Gesellschaft Fur Drahtlose Tel. M. B. H. v. Brown, 78 Fed. (2d) 410; In re Boone, 83 Fed. 944; U. S. v. Costen, 38 Fed. 24; In re O———, 73 Wis. 602 (42 N. W. 221); Steeley v. State, 17 Okla. Cr. 252 (187 Pac. 821); Rakusen v. Ellis, 1 Ch. (Eng.) 831—C. A. An attorney at law is an officer of the court, and as such the court has ample authority to regulate and control his conduct in any matter coming before it. See *DeKrasner* v. *Boykin,* 54 *Ga. App.* 29 (186 S. E. 701), and cit. If in any case it should be made to appear to the court that counsel who proposes to represent one of the parties thereto has previously been in the employment of the opposing party in the same or a related matter, it would be serious error to permit him to continue in the case, unless it should appear that he took no action in the case while counsel for the opposing party, and it was clearly shown that he did not acquire, by reason of such employment, any knowledge or information concerning the case; and even in these circumstances the court might, in its discretion, disqualify him, looking to the full administration of justice. In the present case the judge was authorized to find, as he did, that the relationship of attorney and client had not in fact existed between the defendant and counsel appearing for the State; and since it clearly appears that he did not confer with the defendant, and did not gain any information concerning the case from any of the parties, or from any investigation made by him as counsel for the defendant, a new trial is not required because of his appearance in the case as counsel for the State. State v. Lewis, 96 Iowa, 286 (65 N. W. 295).

■ It appears that Strong Ashmore was drawn and summoned

as·a tales juror under the provisions of the Code, § 59-801, in reference to drawing and impaneling of juries in felony cases. Complaint is made that "the court erred in having the name of Strong Ashmore placed on the list from which the jury was being stricken and selected, he having been excused, and his name not appearing on any jury list until the defense had exhausted practically all of his strikes, when said juror was placed on· the list and defendant was forced to strike him, thereby having to accept another juror which he did not want and could not use, and would not have accepted but for the fact said strike had been wasted on juror Ashmore." In overruling the motion for new trial the judge said, with reference to this ground: "Since this case had been tried before, it was necessary for the court to have a large number of additional jurors sent for; and when court convened on the date fixed for the trial of this case, one of the new jurors, Mr. Strong Ashmore, asked to be excused if we had enough without him. The court told him that we would see if we could select a jury without him; otherwise he would be used, and he was not excused until a jury had been selected. When the list of those who had been sworn had been exhausted, the court had Mr. Ashmore and some additional new jurors brought in and sworn. Mr. Ashmore was never at any time excused." This constitutes a disapproval of the ground, and a new trial could not be granted in reference thereto. *Hatcher v. State*, 176 *Ga.* 454 (4) (168 S. E. 278). If this juror should have been on the original panel of forty-eight jurors placed on the defendant, or on any successive panel, and his name was stricken and another juror placed thereon in his stead, objection should have been made to the panel. *Cochran v. State*, 113 *Ga.* 736 (3) (39 S. E. 337). This not having been done, it certainly affords the defendant no valid ground of complaint that the juror, properly drawn and otherwise qualified, was thereafter placed upon him, the former panels being exhausted without obtaining a jury, where it appears that defendant struck the juror.

■ "Where a number of witnesses testified upon each side of a case, an assignment of error complaining of the admission or rejection of specified testimony of a witness is not valid when it nowhere appears in such assignment of whose testimony the complaint is made." *Sims v. Sims*, 131 *Ga.* 262 (62 S. E. 192); *Clare v. Drexler*, 152 *Ga.* 419 ·(6) (110 S. E. 176). Nor will an assign-

ment of error complaining of the admission of testimony be considered, unless it is made to appear that objection was made to its introduction, and upon what grounds it was made. It is not sufficient that the evidence was admitted over objection; or that certain reasons are stated in the motion for new trial why the evidence was not admissible. *Norman* v. *McMillan,* 151 *Ga.* 363 (4) (107 S. E. 325), and cit. Therefore an assignment of error that "the court erred in allowing the introduction of testimony by the State, over the objection of counsel for movant, to the effect that the deceased died testate, leaving an estate consisting of at least a life-insurance policy, without first having shown to the court and jury that the defendant had knowledge of the fact that his father, the deceased, had died leaving a will, and an insurance policy on his life," which assignment fails to give the name of the witness giving such testimony, and fails to show clearly what objection was made to its introduction, and whether the reason assigned in the ground was that urged upon the trial, can not be considered. Moreover, while evidence of the fact that the deceased left a will naming the defendant as a legatee, or that the deceased left insurance naming the defendant as beneficiary, would not, as a general rule, be admissible for the purpose of illustrating the motive of the defendant in killing the deceased, unless it were further made to appear that the defendant knew of the existence of the will or insurance before the homicide (*Johnson* v. *State,* 130 *Ga.* 22 (2), 60 S. E. 158; *Johnson* v. *State,* 128 *Ga.* 71 (3), 57 S. E. 84; *Beckworth* v. *State,* 183 *Ga.* 871 (2), 190 S. E. 184), yet, since in the present case, as alleged in this ground of the motion, it appears that "there was not even the slightest circumstance from which the court or jury could infer that movant knew or had knowledge of the existence of said will and insurance policy," and it further appears that the evidence for the State consisted in the main of a full and complete voluntary confession of the homicide, in which the defendant stated that before the homicide he had had a good many bottles of beer, and that for a while on the night of the homicide he did "not remember anything that happened . . until" he "heard an explosion of" his "father's pistol," and that he then realized that he had shot his father, the admission of such evidence, even though erroneous, could hardly be said to have been sufficiently prejudicial to the defendant to require the grant of a new trial.

■ Complaint is made that the defendant was not permitted to cross-examine thoroughly a witness who had testified on behalf of the State. This ground, in its material part, is as follows: "Movant further shows that there were many facts and things about which said witness testified on her direct examination, which defendant's counsel wished to cross-examine said witness, but he was denied that right by the court; the court at the time stating that the witness had already testified to the facts about which she was being questioned, and that counsel for the defendant should not and could not ask the witness questions that would require an answer like which she had given on her direct examination." If there was actually any error in the action of the judge in restricting the scope of the cross-examination of this witness for the State, it is not discoverable from the record or the assignment of error made thereon. It is true that "the right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him" (Code, § 38-1705), and that a substantial denial of this right is good cause for the grant of a new trial. *White* v. *Dinkins,* 19 *Ga.* 285; *Becker* v. *Donalson,* 133 *Ga.* 864 (67 S. E. 92); *Daniel* v. *Ga. R. Bank,* 44 *Ga. App.* 787 (163 S. E. 311); *Barnwell* v. *Hannegan,* 105 *Ga.* 396 (31 S. E. 116). However, the scope of the cross-examination of a witness rests largely within the discretion of the judge. *Fouraker* v. *State,* 4 *Ga. App.* 692 (62 S. E. 116); *Hagood* v. *State,* 5 *Ga. App.* 80 (62 S. E. 641); *Rogers* v. *State,* 18 *Ga. App.* 332 (89 S. E. 460); *Fields* v. *State,* 46 *Ga. App.* 287 (167 S. E. 337). He may restrict the cross-examination to matters material to the issues. *Hawkins* v. *State,* 141 *Ga.* 212 (5) (80 S. E. 711); *Smiley* v. *State,* 156 *Ga.* 60 (118 S. E. 713); *Stevens* v. *State,* 49 *Ga. App.* 248 (174 S. E. 718). He may also restrain useless and unnecessary repetition of questions which have been asked and fully answered. *McLeod* v. *Wilson,* 108 *Ga.* 790 (33 S. E. 851); *Thompson* v. *State,* 166 *Ga.* 758 (144 S. E. 301); *Sims* v. *State,* 177 *Ga.* 266 (170 S. E. 68). The present assignment does not affirmatively show a substantial denial of the defendant's right to fully cross-examine witnesses appearing against him. It does not appear what questions were propounded to the witnesses, nor are the matters stated as to which it is claimed the judge refused to permit cross-examination. In fact the ground wholly fails to give the circumstances under which the ruling com-

plained of was made. The recital in the ground that "there were many facts and things about which said witness testified on her direct examination, which defendant's counsel wished to cross-examine said witness, but he was denied that right by the court," is not to be considered as a fact approved as true by the judge in his certificate to the motion, but merely a conclusion or contention of the defendant. See *Humphrey* v. *State,* 24 *Ga. App.* 22 (99 S. E. 714) ; *Rewis* v. *State,* 27 *Ga. App.* 258 (2) (108 S. E. 62) ; *Jackson* v. *State,* 56 *Ga. App.* 250, 254 (192 S. E. 454) ; *McCranie* v. *State,* 51 *Ga. App.* 192 (179 S. E. 826).

In the above ground complaint is made of certain remarks made by the judge during the cross-examination of this witness. The remarks do not appear to have been sufficiently prejudicial to warrant the grant of a new trial. Furthermore, it does not appear that counsel made any objection, or motion to declare a mistrial, based on these alleged improper remarks. The complaint is therefore defective. *Perdue* v. *State,* 135 *Ga.* 277 (69 S. E. 184) ; *Morris* v. *State,* 185 *Ga.* 67 (194 S. E. 214).

■ It is alleged that the court erred in allowing a witness for the State to testify, over objection, as to a conversation between the witness and the deceased a few months before his death, as follows : "His father said he was drunk, and wouldn't go with him, and he was afraid he would get in trouble; said he had just paid him out of trouble, and wanted me to lock him up; said he was pretty bad when he was drinking." It is alleged that in admitting this testimony it unlawfully placed the character of the defendant in issue. Since the ground does not set out what objection was made to the introduction of the evidence, and whether the reason assigned in the ground was that urged upon the trial, it presents no question for decision. See authorities cited in second division of this opinion. However, the ground appears to be without merit. It is further recited "that while the court stated for what purpose said testimony was admitted for, he failed and refused to instruct the jury that they could not consider said testimony as reflecting on or showing the good or bad character of the defendant." It would therefore appear that this testimony was allowed in evidence by the judge only for a stated purpose, and we may presume that the jury was made so to understand at the time. For what purpose the judge allowed the testimony to go in evidence does not appear

from the ground, but presumptively it was admissible for the purpose for which it was admitted. The fact that the evidence tended to discredit the character of the defendant made it none the less admissible where otherwise relevant; and where, as in the present case, the evidence was admitted only for a relevant purpose, it is not ground for a new trial that the judge did not thereafter instruct the jury as to the limited purpose for which this evidence might be considered. See *Haden* v. *State,* 176 *Ga.* 304 (168 S. E. 272); *Johnson* v. *State,* 70 *Ga.* 725; *Cantrell* v. *State,* 141 *Ga.* 98 (80 S. E. 649).

■ Certain alleged newly discovered evidence consists of affidavits of Vernon Ford and Nat Gordon, to the effect that shortly before the approximate time of the homicide they drove into the filling-station operated by the defendant and his father; that they found the defendant alone in the station; that after they had been in the station about five or ten minutes the deceased came in "from the back or side door," and asked the defendant if he had a quarter; that the defendant replied that he had, and handed him some money; that "when they drove into the station, . . there was a passenger automobile standing at the rear door of the filling-station, and . . when they left it was still standing there;" that it was not the car of Thomas H. Bagley, or the Ford pick-up truck belonging to the Cliftons; that "after Mr. Clifton [the deceased] had gotten the money from James . . he went to the back door, and when he reached the back door that there was some one just outside, who stated that he had it;" that "affiant does not know who it was speaking and what they were talking about, but that they turned and went to the door and got in the car and left." It appears that on the trial Thomas H. Bagley, a witness for the defendant, swore that he was with the defendant at the filling-station from eight o'clock until 11:10 p. m., and he left no one there but the defendant and his father. Miss Oliver, a telephone operator, testifying for the defendant, swore that she handled a call made by the defendant to the sheriff, wherein he reported the killing at 11:13 p. m. There was testimony that the defendant testified before the coroner's jury that no one came to the filling-station and he saw no one from the time Mr. Bagley left until he telephoned to the sheriff a few minutes later. There was the defendant's full and complete confession of the homicide. In his statement to the

jury the defendant made no mention of the visit of the above witnesses to the station, but stated that immediately after Mr. Bagley left, his father went out in the front of the station to lock up, and came back through the station saying that he was going to bed, that just after he left the building two cars drove around "kinda to the back of the place, and parked out near the cabin;" that he immediately heard two shots and looked out and saw the cars drive off. We think it apparent that the judge did not abuse his discretion in overruling this ground of the motion. The evidence was impeaching, and in certain respects merely cumulative in character, and certainly was not such as it could be reasonably said would likely produce a different verdict at another trial.

The remaining headnotes require no elaboration. The court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*