## CANNON v. THE STATE.

No. 14215. JULY 15, 1942.

W. A. Dampier and Lester F. Watson, for plaintiff in error.

Ellis G. Arnall, attorney-general, J. Eugene Cook, solicitor-general, and Emil J. Clower, assistant attorney-general, contra.

REID, Chief Justice. In October, 1941, John Nathan Cannon was indicted for the murder of Warren Thomas. It was alleged in the indictment that the defendant committed the murder by striking and beating Thomas with an ax, and that this and the death occurred in September, 1932. Upon the trial Cannon was convicted, and was sentenced to life imprisonment. His motion for new trial was overruled, and he excepted.

There is no claim of any error on the trial of the case, except the overruling of the general grounds of the motion and one special ground which set up a claim of newly discovered evidence.

By a witness, Lottie Fay Meeks, who claimed to have been with the defendant about twelve o'clock on the night of September 1, 1932, when it was alleged the crime was committed, the State made out about the following case: After dark on that night the defendant, whom witness had known and had been going with three or four years, came by the home of Miss Alice Watkins, where witness was living, and picked her up in an automobile for a date. From the Watkins home they went to town (Dublin, Georgia), rode around in town, and finally parked on the street, where

they drank some liquor. They later drove about nine or ten miles on the Dexter road to the place where Warren Thomas had a store. Cannon drove his car "just beyond the store" and called to Thomas, telling him that he wanted to get in the store. Thomas came out, struck a match, and opened the store. The two men went into the store and Cannon came out bringing coca-cola to the car where witness had remained. After taking a drink of liquor, Cannon turned and gave the witness a drink, using the coca-cola as a chaser. Then Cannon got an ax out of the back seat of the automobile as Thomas was on the outside of his store locking the door. Using the ax, Cannon struck Thomas on the head once while he was standing, and three or four times after he fell. The pocket-book belonging to Thomas was picked up by Cannon, who put it into his pocket. At the time, the witness could and did see Cannon hit Thomas with the ax, and she saw him with the pocket-book. She was told by Cannon to hold a pistol which Cannon had; whereupon she began "crying and hollering." The killing occurred in Laurens County. The witness was threatened by Cannon that if she ever told of the occurrence he would kill her. She did not know of the purpose of Cannon to kill Thomas, either at the time of the killing or before. They left the place of the crime and went to Dublin, reaching there after midnight. Witness was still crying when she got out of the car. Cannon again threatened to kill her if she ever mentioned the crime. Next day she saw Cannon, and he bought her some clothes. She met Cannon at different times thereafter. He continued to make threats to kill her if she told on him. She was afraid of Cannon, and that was the reason she had failed to tell any one about the killing, except that she had told Louis Veal about two years before the trial.

It was shown from other evidence, that Thomas was found on the next morning in his home, where he apparently lived alone, near the store; that he was suffering from deep scalp wounds and fracture of his skull, and was lying on his bed in much blood; that he apparently had crawled into his house from the point described by Lottie Fay Meeks as the place of the killing, leaving a trail of blood; that he was taken to a hospital in Dublin, where, as the result of such wounds and fracture of the skull, he died on September 2; that the ax or one meeting its description was found at the

place of the killing; and that the pocket-book referred to by Lottie Fay Meeks was missing from the pockets of the deceased.

The defendant made a statement saying that he was innocent and was being prosecuted because of the enmity of Louis Veal, who had "this woman to swear this on me." Witnesses for the defendant testified as to the bad character of Lottie Fay Meeks, and to the effect that they would not believe her on oath. The defendant sought to show that on the date of the crime Lottie Fay Meeks was living with Grace McDaniel instead of Alice Watkins, as she had claimed. By this line of testimony it is apparent that the defendant sought not only to impeach the State's witness, Lottie Fay Meeks, but also to show that she could not have been at the place and on the night of the murder, as she testified.

■ The special ground of the motion for new trial recites the discovery, since the trial, of new evidence which it is contended would be delivered by Corbin, who would "testify that he was with the witness Lottie Fay Meeks," at the time of the alleged crime and that "she could not have been at the place of the homicide at the time it was shown the homicide occurred." The amendment conformed to statutory requirements (Code, §§ 70-204, 70-205), unless the showing of diligence by defendant and counsel was insufficient. See *Smith* v. *Bennett,* 144 *Ga.* 691 (87 S. E. 888). In view of the ruling required otherwise, that question will not be discussed. The State made a counter-showing and presented a counter-affidavit from the proposed witness, in which he largely repudiated the one relied upon in the amendment, and made it extremely doubtful and equivocal as to just what his testimony might be or what effect it might have. In the latter affidavit he says "he can not swear positively and of his own knowledge that the night he was off with Lottie Fay Meeks . . was on the night of September 1, 1932," the night of the homicide. It is well established that unless such newly discovered evidence is of such a character as that upon another trial its introduction would likely produce a different result, the judge does not err in overruling the motion for new trial. *Miller* v. *State,* 151 *Ga.* 710 (2) (108 S. E. 38); *Pease* v. *State,* 91 *Ga.* 18 (16 S. E. 113); *Aiken* v. *State,* 176 *Ga.* 338 (168 S. E. 34); *McCoy* v. *State,* 191 *Ga.* 516 (5) (13 S. E. 2d, 183). The proposed evidence was both cumulative and impeaching in its nature. The defendant had sought

at the trial to show that this particular witness upon whom the State relied was not and could not have been at the place of the homicide, as she claimed. Code, § 70-204; *Clifton* v. *State,* 187 *Ga.* 502 (6) (2 S. E. 2d, 102) *Aycock* v. *State,* 188 *Ga.* 550 (8) (4 S. E. 2d, 221). This ground was without merit.

■ The striking and beating of the deceased was fully described by the State's witness, and the resulting death from this cause was fully established, and not disputed. The weapon and blood were found at the scene of the crime the next morning. The character of the State's witness was attacked, but the jury accepted her evidence; and no error appearing, it is not in the province of this court to disturb their finding. *Merritt* v. *State,* 190 *Ga.* 81 (8 S. E. 2d, 386) ; *Bowen* v. *State,* 188 *Ga.* 28 (5) (2 S. E. 2d, 637).

*Judgment affirmed. All the Justices concur.*